<hr/>

EDITH TALBOT BARNES *vs.* ALBERT M. CHANDLER & another, executors.

MIRIAM TALBOT MARTIN *vs.* SAME.

Middlesex.   October 8, 1931. — December 3, 1931.

Present: RUGG, C.J., CROSBY, CARROLL, SANDERSON, & FIELD, JJ.

*Survivorship.  Joint Tenants.  Savings Bank.  Co-operative Bank.*

A niece, residing in Arizona, sent as a gift a certain amount of money each month to her aunt, a woman of limited financial resources living in Malden.  The aunt, writing the niece that she was depositing the money as she received it and that unless she exhausted her personal

means the niece would receive with interest what she had sent, enclosed a signature card for the niece to sign respecting an account in a savings bank standing in the name of the aunt or the niece, "joint account payable to either or the survivor." The card was signed by the niece and filed with the bank. The bank book remained in the possession of the aunt. The aunt also purchased matured and "paid up" shares in a coöperative bank, certificates of which were issued in the names of the aunt "and/or" the niece, either being entitled to obtain the value of the shares under the rules of the bank. A signature card of the niece was given to the bank, the certificates remaining with the aunt, who received and used the dividends. After the death of the aunt testate, the niece brought a petition in the Probate Court to determine title to the deposits and the certificates. *Held,* that the niece took title as survivor of her aunt in accordance with completed contracts with the banks entered into during the lifetime of the aunt.

Two PETITIONS, filed in the Probate Court for the county of Middlesex on December 10, 1930, and described in the opinion.

The petitions were heard together by *Leggat,* J., upon an agreed statement of facts. Material facts are stated in the opinion. The judge reserved and reported the cases for determination by this court.

*E. B. Church,* for the petitioners.

*A. M. Chandler,* for the respondents.

SANDERSON, J. These are two petitions to determine the title to certain assets in the hands of the respondents as executors under the will of Eliza J. Talbot, a woman of limited financial resources, who died testate on July 25, 1929. Her sister-in-law, who died in Arizona in 1922, had for some years prior to that time made contributions toward the support of the testatrix intended as gifts. After the death of this benefactress her two daughters, Mrs. Martin and Mrs. Barnes, respectively petitioners herein, remitted $25 a month to the testatrix as gifts and these payments continued until her death.

On November 10, 1928, the testatrix opened two accounts in the savings department of the First National Bank of Malden, one in the name of "Eliza J. Talbot or Edith Talbot Barnes joint account payable to either or the survivor," and the other in the name of "Eliza J. Talbot or Miriam Talbot Martin joint account payable to either

or the survivor." The amounts of the original deposits with the additions thereto are set forth in the agreed facts. The totals, which may be somewhat increased by additions of interest or dividends, are much less than the payments made by the two petitioners. The signatures of both petitioners were deposited with this bank, but the bank books were at all times until the death of the testatrix in her possession and control. No withdrawals of either principal or interest were made. Under the rules of the bank either party named on the bank book could withdraw money on presentation of the book. Shares of stock of the Malden Co-operative Bank were purchased by the testatrix on various dates from September 1, 1927, to August 18, 1928. These were all either "matured" or "paid up" shares, each being of a par value of $200. Seven were issued in the names of "Eliza J. Talbot and/or Miriam T. Martin" and seven in the names of "Eliza J. Talbot and/or Edith T. Barnes." Their total value was $2,800. The signatures of the two petitioners were furnished to the Malden Co-operative Bank and under its rules either party named in a certificate could obtain its value without the assent of the other party. The certificates were continuously in the possession of the testatrix, who received and used the dividends. During the period covered by these transactions Mrs. Talbot corresponded with the petitioners but did not see them.

In letters from the petitioner Mrs. Barnes, written after the death of her aunt, to one of the executors, she stated that the money contributed by her and her sister was to provide greater comfort for their aunt in her declining years; that her aunt wrote both nieces that she was depositing the money as she received it, first in the name of one and then in the name of the other, and that unless she exhausted her personal means they would receive with interest what they had sent her month by month; and that they were sent slips to sign so that the bank might have their signatures. The petitioner Mrs. Martin wrote to one of the executors in February, 1930, that her aunt advised her of the accounts in the First National Bank of Malden and the Malden Co-

operative Bank when they were first opened; that her aunt
instead of spending the money for her personal comfort, as
she and her sister requested her to do, opened the accounts
advising both nieces of her action and stating that unless her
own personal funds became exhausted prior to her death
she intended leaving the joint accounts intact for them;
that approximately all the money sent from them was de-
posited in the Malden banks with the intention on the part
of the aunt that it become the property of her nieces upon
her demise. It is not argued, nor does it anywhere appear,
that so far as the rights of the parties are concerned the sav-
ings bank deposits stand on any different footing from the
coöperative shares and no distinction will be made between
them here. *McKenna* v. *McKenna,* 260 Mass. 481, was de-
cided upon the ground that the evidence justified a finding
that title to a savings bank deposit passed by way of gift to
a person named as joint owner. By a series of decisions
beginning with *Chippendale* v. *North Adams Savings Bank,*
222 Mass. 499, the court has held that in some cases, where
the facts would not justify a finding of an executed gift, the
survivor of two persons named as joint depositors became
owner of the deposit by virtue of a contract with the bank
in which the funds were deposited. See *Perry* v. *Leveroni,*
252 Mass. 390; *Brodrick* v. *O'Connor,* 271 Mass. 240, 246;
*Kentfield* v. *Shelburne Falls Savings Bank,* 273 Mass. 548;
*Holyoke National Bank* v. *Bailey,* 273 Mass. 551; *Rockefeller*
v. *Davenport, ante,* 105. In *Perry* v. *Leveroni,* 252 Mass.
390, the court said at page 393: "As to the deposit in
the County Savings Bank, the agreed facts show that it
was made in the names of the husband and wife and was
payable to either of them or the survivor. It is also agreed
that both signed and delivered to the bank the usual
identification cards. Upon these facts there was no gift
during the husband's lifetime and no gift of the balance upon
his death. There was, however, a completed contract
between the depositor and the bank, assented to by Mrs.
Morse, by which, upon the death of her husband she became
the owner of the balance of the deposit. It is immaterial that

the bank book remained in the possession of Morse. By the terms of the contract the balance belonged to her as the survivor. It was not a gift to take effect at his death, and the fact that the statute of wills was not complied with does not affect her right to the deposit." In the same case at page 392 the court held that two other deposits standing in the name of the depositor "or Alice M. Morse, or the survivor" did not go to Mrs. Morse. In that case it did not appear that either book was delivered to her or that she signed or delivered to the bank any identification card or that she knew during her husband's lifetime that the deposits were made payable to her husband or herself or to the survivor. The depositor made no declaration or communication to her that he intended the money represented by the deposits to be hers. Neither of these deposits passed by gift and the court said there was no contract with the bank "by virtue of which the depositor or his wife could draw such sums as either desired from these deposits, nor that after the death of one the balance was to belong to the survivor."

The petitioners in the case at bar lived in Arizona while the testatrix lived in Malden, where the banks were located. Her possession of the books and shares of stock was consistent with the purpose of the petitioners that she might use for her comfort and well-being the property, and with their own intention not to use the money in the joint accounts during the life of the testatrix. The purpose of the petitioners to become parties to contracts with the banks is sufficiently shown by their signing and leaving with the banks signature cards and by the fact that they would thereby be gaining a benefit. *Moore* v. *O'Hare,* 224 Mass. 283. *Kentfield* v. *Shelburne Falls Savings Bank,* 273 Mass. 548.

In *Holyoke National Bank* v. *Bailey,* 273 Mass. 551, the parties agreed that deposits were made in the names of the husband and wife, payable to either or the survivor, that all deposits and withdrawals were made by the husband, that the bank books were always within his exclusive control, and that both parties signed deposit cards. In this

case the court said at pages 554–555: "The present case is to be decided upon the agreed facts and the reasonable inferences to be drawn therefrom . . . . After the deposits had been made the parties became joint owners, and upon the death of the husband, the wife, as survivor, by virtue of the terms of the deposits, became as matter of law vested with title to each of them. The circumstance that the husband took possession of the books and kept them during his lifetime and did not expressly state that he intended his wife to have title after his death is of no consequence. It could reasonably be inferred from the agreed facts that such was his intention. She knew when the deposits were made that they were made in their joint names, and both signed deposit slips to that effect. It is plain that there was a completed contract between the banks and Michael Cleary by which, upon the death of the husband, she became as survivor the owner of the deposits. ˙The case cannot be distinguished in principle from *Chippendale* v. *North Adams Savings Bank*, 222 .Mass. 499. *Perry* v. *Leveroni*, 252 Mass. 390. *Brodrick* v. *O'Connor*, 271 Mass. 240, and cases cited." In *Battles* v. *Millbury Savings Bank*, 250 Mass. 180, the exceptions were sustained because the trial judge refused requests for rulings to the effect that if the intention was to make a gift at the testatrix's death the plaintiff could not recover, and because he gave an instruction to the effect that the jury were not concerned with the question whether there had been a gift to take effect upon the death of the testatrix, and further that the plaintiff would not be prevented from recovery unless both she and the testatrix were shown to be parties to a scheme to do nothing else in the case except to circumvent the statute of wills.

The case at bar is in some respects not so strong for the surviving joint owners as some of the cases to which reference has been made, but it is controlled in principle by them, and the petitioners must be held to take as survivors upon the theory of completed contracts entered into during the lifetime of the testatrix. In each case a decree is to be entered establishing the petitioner's title to the bank book

and shares described in her petition, and ordering the defendants to deliver the same to such petitioner. Motions for costs are disallowed.

*Ordered accordingly.*