WILLIAM E. MURPHY & another, administrators, vs.
JAMES A. NALLY.

Worcester.    September 26, 1938. — October 26, 1938.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Undue Influence.    Gift.*

Evidence merely that a relative of a woman sixty-eight years of age had
    ample opportunity to exert undue influence to induce her to transfer
    bank accounts to their joint names was not enough to require a find-
    ing that such influence was exerted.

PETITION, filed in the Probate Court for the county of
Worcester on March 15, 1937.

From a decree, entered after hearing by *Chamberlain*, J.,
the petitioners appealed.

*W. C. Maguire, A. A. Philbin & J. J. Philbin*, for the
petitioners, submitted a brief.

*G. R. Stobbs, (W. J. Granfield* with him,) for the respond-
ent.

RONAN, J.    Upon a petition filed by the administrators
of the estate of Katherine E. Abbott in the Probate Court
for the county of Worcester alleging that the respondent,
who stood in a fiduciary relation with the intestate, had
caused her, through undue influence exerted by him upon
her, to transfer certain bank accounts owned by her into
their joint names and to transfer certain securities to him,
a decree was entered that the deposits were the property
of the respondent and that the stocks and bonds were
assets of the estate.    The petitioners appealed.

There are no findings of material facts but all the evidence
has been reported.    It is the duty of this court to examine
the evidence, determine the facts and decide the case upon
its own judgment, giving due weight to the findings made
by the judge of probate upon oral testimony of witnesses
who appeared before him, which findings are not to be
reversed unless they are plainly wrong.    *Comstock* v. *Bowles,*

295 Mass. 250, 253–254, and cases cited. The ownership of the stocks and bonds is not now in issue.

The intestate died on January 6, 1937, at the age of seventy-three years. The respondent was her third cousin. The relations between the families of both had been fairly close and intimate for a great many years. Michael Abbott, her brother, had died in 1930 leaving to her all his property amounting to $16,000. Her brother and the respondent were friends. The intestate had lived in Spencer all her life. The respondent, a clergyman, was connected with a church in Worcester during the five years preceding September, 1930, and during this period he visited his cousin, the intestate, on at least twenty-four occasions. In September, 1930, he was assigned to a church in Spencer where he remained for nearly four years. His residence there was located upon the same street upon which the intestate lived. He saw her daily. Sometimes, she would call him as he was passing and, at times, she complained because he went by without coming in. She frequently told him that her brother, Michael, wanted his property to go to the respondent and that she would comply with the wishes of her brother. The respondent made no suggestions and never advised her concerning this property. She was capable of managing her own affairs. At the time of the transactions in question she was about sixty-eight years of age and in normal health for a person of her years. None of her mental faculties was impaired. She was sensible and strong willed.

She went to her safety deposit box on December 6, 1932, and removed four bank books and some stocks and bonds and took them home. These books and securities had come to her from the estate of her brother. When the respondent called at her home, she told him she wanted to settle things as her brother had told her to do and wanted the respondent to have the bank books, securities, and joint control of her safety deposit box. She told him to take the bank books to the various banks and have them made into joint accounts. He went to the banks and returned with identification cards and transfer slips. On his visit on the next day, he told her it would be necessary to have

a witness to their signatures. They agreed to request one Putnam to act as a witness. Putnam was connected with a local bank where the intestate had done business for years. She was well acquainted with him. Putnam came to the house and, in the presence of the respondent, fully explained the nature of a joint account and the effect of signing the cards and slips. He also informed the intestate concerning joint control of her safety deposit box. She expressed satisfaction and she and the respondent signed the papers necessary to create the joint accounts. Putnam witnessed the signatures and then left. The intestate then handed the stock to the respondent, instructing him to make a list of it. He told her to return the books and securities to the box as there might be a fire. She tendered him a key to the box, but he declined to accept. She told him where he could find it, if he wanted it. Within a day or two he went to the bank and signed a card giving him access to the box, but he never went to this box while his cousin was alive. The intestate took or mailed the books, together with the cards and slips, to the banks and the accounts were changed to joint accounts. On January 4, 1933, she created another joint account, giving him the check to open this account. At the same time she divided $250 between the respondent, his mother and sister. From the time of these transactions and up to the death of the intestate, the respondent never had possession of the books or securities and never had a key to the box.

The evidence on the issue of undue influence taken as a whole shows scarcely anything beyond an opportunity for its exercise. The intestate fully understood and appreciated the effect of changing her accounts into joint accounts. There is nothing to indicate that her action was not free and voluntary. We agree with the remark made by the judge of probate during the argument before him that there was no evidence of undue influence. *Walsh* v. *McGrenery*, 299 Mass. 153, 155. *Foley* v. *Philbrook*, 300 Mass. 418, 425.

There was no relation of trust and confidence between the intestate and the respondent. She never consulted with

him concerning her business. He never discussed her own property with her. Mere friendship existing between the parties cannot be converted into a fiduciary relation where there is no evidence that she relied upon him in any way or that he ever attempted to advise her. She acted entirely upon her own independent judgment and apparently intended to carry out the wishes of her deceased brother in creating the joint accounts. The evidence fails to disclose any fiduciary relation between them. *Smith* v. *Smith,* 222 Mass. 102, 106. *Hill* v. *Hill,* 278 Mass. 44, 51. *Millett* v. *Temple,* 285 Mass. 87, 90.

The intestate intended to give the respondent a present interest in each of the five deposits, which was measured and defined by the contractual rights established with the banks by virtue of the operation of the deposit agreements made at the time the accounts became joint and payable to the survivor. Such an interest ripened into a full and complete ownership of the deposits upon the death of the intestate, which then became the sole property of the respondent. *Holyoke National Bank* v. *Bailey,* 273 Mass. 551. *Coolidge* v. *Brown,* 286 Mass. 504. *Goldston* v. *Randolph,* 293 Mass. 253. *Batal* v. *Buss,* 293 Mass. 329.

*Decree affirmed.*