AUSTIN J. KITTREDGE, executor, *vs.* NORA MANNING (LYONS) & another.

Worcester.     December 8, 1944. — February 7, 1945.

Present: FIELD, C.J., QUA, DOLAN, RONAN, & SPALDING, JJ.

*Gift. Joint Tenants. Bank and Banking. Personal Property,* Joint tenancy.

To make a valid gift of a joint interest in an account of a depositor in a savings bank, it is not necessary that an intention to make the gift and the depositor's act of changing the deposit into the names of himself and the donee as joint owners occur simultaneously; it is sufficient to the validity of the gift that the depositor, at some time after the actual change to the form of a joint account formed the intention that the ordinary incidents of a joint account should apply to the account.

A finding, that the owner of a savings bank deposit, after changing it into the names of himself and a niece as joint owners, made statements to her and others showing that at some time after the change he formed the intention to make a gift of a joint interest to her, warranted a conclusion that there was a valid gift of such an interest, although at the time of the change he did not have that intention and the niece never signed a card at the bank, never made any deposit in the account and never had possession of the deposit book.

PETITION, filed in the Probate Court for the county of Worcester on July 22, 1943.

The case was heard by *Wahlstrom*, J.

*M. C. Jaquith,* for the petitioner.

*W. W. Buckley,* (*T. E. Marshall* with him,) for the respondents.

DOLAN, J. This petition in equity is brought to determine title to a deposit in the Clinton Savings Bank standing in the name of "Patrick Manning, Nora Manning, payable to either or the survivor." The petitioner is the executor of the will of Patrick, hereinafter referred to as the decedent. The case comes before us on the appeal of the petitioner from the decree entered by the judge that the deposit is the property of the respondent Nora Manning (Lyons), hereinafter called the respondent.

The evidence is not reported, but the judge at the request of the appellant made a report of the material facts found by him. See G. L. (Ter. Ed.) c. 215, § 11. Those facts may be summed up as follows: The decedent, a resident of Clinton, died on April 29, 1942, at the age of about sixty-eight years, leaving a will which was duly allowed and under the terms of which he bequeathed all of his property to three persons, none of whom was related to him. His estate consisted of personal property. His heirs at law were three brothers and several nieces and nephews. The respondent was a niece presumably by one of his brothers who resided in Ireland and survived the decedent. For several years the decedent had a deposit in the Clinton Savings Bank in excess of $4,000. On May 4, 1936, he went to the bank to make a deposit in his account. A teller informed him that his account was too large to carry in one name, and that if he wished to continue to make deposits

therein he should "add a name to the book." The decedent instructed the teller to add the name of the respondent to the book, and that was done. The teller requested him to have Nora sign a card, but he replied that he preferred not to have her do so. "There is a pencil notation on the card which reads, 'Patrick prefers not to have Nora know about this account.'" The respondent never signed any card at or for the bank, never had the book in her possession, and contributed no money to the account. The decedent's relations with her were friendly for many years. In May, 1928, he wrote her expressing his fondness for her and stating that he planned to leave his property to her. In 1938 he said to her in the presence of her sister, "I am going to make you a nice little present. . . . I have your name on my bank book in the Clinton Savings Bank. I am very fond of you, Nora." Soon after she went to Ireland. In 1940 the decedent said to her sister, Mrs. Corrigan, "I have a nice little bank book out for Nora." On April 10, 1942, he told her that he had Nora's name on the book in question, saying, also, "I want Nora to have that money. You know, a bank account with two names is iron-clad." Shortly before his death he spoke in similar terms again to Mrs. Corrigan. In 1940 he made similar statements to his nephew Austin who was the respondent's brother. The decedent was admitted to the Clinton Hospital on April 12, 1942, and on that day he delivered the book of deposit in question to the petitioner. On April 14, the petitioner directed his attention to the joint account in his name and in the name of the respondent, and the decedent said, "I know it. I will take care of that when I get home." The ultimate findings of the judge are that the deposit in question is the property of the respondent "because of a contract with the bank and the communication to and acceptance by . . . [her]."

Since the evidence is not reported, the sole issue is whether the decision of the judge is supported by the facts found. *Castle* v. *Wightman*, 303 Mass. 74, 76. *Colby* v. *Callahan*, 311 Mass. 727, 728. The petitioner contends that the facts found by the judge do not support his deci-

sion, stressing the findings that the respondent was not present at the bank when the deposit was made in joint account, that she signed no card for the bank, and that the decedent never delivered the book of deposit to the respondent but retained possession of it until shortly before his death when he delivered it to the petitioner, and arguing that the proper conclusion is that at the time of the joint deposit the decedent had no intention of making a gift of a present interest therein to the respondent, but merely adopted the form so that he might be permitted to make further deposits in the account then standing in his name alone; and that to effectuate a gift of a present interest, the intent on his part to make such a gift must as matter of law have existed simultaneously with the opening of the joint account. The petitioner also contends in the alternative that the subsequent statements of the decedent with reference to the joint account were all phrased in terms not of present but of future intention.

The law on this subject of joint accounts has been stated in a number of decisions of this court, such as *Goldston v. Randolph*, 293 Mass. 253, *Batal v. Buss*, 293 Mass. 329, *Castle v. Wightman*, 303 Mass. 74, *Sullivan v. Hudgins*, 303 Mass. 442, *Ball v. Forbes*, 314 Mass. 200, *Malone v. Walsh*, 315 Mass. 484, and *MacLennan v. MacLennan*, 316 Mass. 593. By the authority of such cases as those just cited it is settled that the contract with the bank takes the place of delivery, and that the change in the deposit here involved would operate as a present and completed gift of an interest in joint ownership if the former owner, the decedent, intended that result, even though he retained possession and control of the deposit during his lifetime and the book of deposit was never manually delivered to the respondent and she signed no card for the bank in connection with the account. Although these latter circumstances are to be considered in ascertaining the intent of the decedent, they are not conclusive. It is also settled that the transaction is taken at its face value unless the evidence shows that it was not so intended, that, while the contract of deposit is conclusive as between the bank

and the other parties thereto, as between the parties other than the bank the form of the deposit does not settle the matter, and that it is open to the representative of the estate of the decedent to show by attendant facts and circumstances that he did not intend to make a present completed gift of a joint interest in the account. For cases other than those cited above that support the foregoing, see those cited in *Malone* v. *Walsh,* 315 Mass. 484, 486–487.

For the purposes of the case we assume in favor of the petitioner that the findings of the judge with relation to the circumstances attendant upon the changing of the deposit into joint account, standing alone, would not justify a conclusion that at that precise time the decedent intended to make a present gift to the respondent of an interest in the account that would ripen into full possession and enjoyment upon his death, although the mere fact that he did not then propose that the respondent should know of his action would not be conclusive. With this assumption the decisive questions are whether the intent to make such a gift could be effectively formed thereafter, and, if it could, whether the facts found with reference to the subsequent conduct of the decedent bearing on this question support the decision of the judge.

We are of opinion that it cannot be said as matter of law that the act of deposit in joint account and the intention to make a present gift to the other person named of an interest therein must occur simultaneously in order to make the gift valid, and that it is sufficient if it be shown that the ordinary incidents of such an account were later intended by the decedent. It is obvious that, having formed such an intent subsequently to the opening of the account, the decedent could have assured the result of a present gift to the respondent by withdrawing and redepositing the account on the same terms. In our view that would be no more than an idle gesture. The contract with the bank took the place of delivery, the deposit was in receptive form, it was in the control of the decedent, and we think that the transaction could be completed subsequently

so as to effect a present gift of an interest therein. The prior constructive delivery accompanied by a later intent on the part of the decedent to make the gift of a present interest in the account to the respondent would operate to make perfect that which before had been inchoate.

We are of opinion that the facts found support the conclusion that subsequently to the opening of the joint account the decedent formed a settled intention of making a present gift of an interest therein to the respondent, that his statements read as a whole are not to be interpreted as meaning that at some time he intended to make the gift to the respondent but are to be interpreted as meaning that he had done so, that he had communicated to the respondent and others that he had her name on his bank book in the savings bank involved, that he was of opinion that a "bank account with two names is iron-clad," and that he intended that result in connection with the deposit in question. The conclusion of the judge that the respondent accepted the gift is supported by the facts found.

*Decree affirmed.*