PAUL F. ARMSTRONG, administrator, *vs.* JEROME E. O'BRIEN & others.

Bristol.   October 27, 1952. — December 30, 1952.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Gift.   Joint Tenants.   Personal Property,* Joint tenancy.

The circumstances in which an elderly widower, a few years before his death, converted three savings bank accounts of his constituting a substantial part of his property into joint accounts with his nephew payable "to either or the survivor" and, after giving the three bank books to the nephew, obtained a return of two of them and kept them until his death, and the nephew retained the third book until the uncle's death and made withdrawals from the account represented by it to pay the uncle's expenses, justified a conclusion that in creating the joint accounts the uncle made a present gift to the nephew of a joint interest therein which ripened into full ownership at the uncle's death.

PETITION, filed in the Probate Court for the county of Bristol on February 12, 1951.

The case was heard by *Considine,* J.

*Ronald A. Brais,* for the petitioner.

*John W. McIntyre, (Dean K. Howerton* with him,) for the respondent O'Brien.

SPALDING, J.   The ownership of three savings accounts is in dispute here.   The petitioner, who is the administrator with the will annexed of the estate of Cornelius O'Brien, contends that the accounts belong to the deceased's estate, whereas the respondent Jerome E. O'Brien (hereinafter called the respondent) asserts ownership by reason of an alleged gift inter vivos.   From a decree in favor of the respondent, the petitioner appealed.   The material facts were found by the judge, and the evidence is reported.

The facts found by the judge and by us may be summarized as follows: Cornelius O'Brien, late of Attleboro, died on February 19, 1950.   He was a widower, his wife having died in September, 1943, and his only child had predeceased him.   His will, executed on December 3, 1943, disposed of $9,250 in twenty-two legacies, and the respondent, a nephew, was named residuary legatee.   The assets of the estate, exclusive of the disputed savings accounts, amount to $2,025. At the deceased's death there were three savings accounts standing in the names of himself and the respondent, each of which was described as a joint account, payable "to either or the survivor."   These accounts were with The Attleborough Savings Bank of North Attleborough, the Attleboro Trust Company, and the First National Bank of Attleboro, the balances of which at the deceased's death were, respectively, $12,463.71, $7,992.32, and $530.86.   All of the funds comprising the accounts were contributed by the deceased and prior to their being made into joint accounts were owned exclusively by him.   The account in the Attleboro Trust Company was converted by the deceased into a joint account with the respondent on November 13, 1944, and the accounts in The Attleborough Savings Bank and the First National Bank of Attleboro were similarly converted on June 5, 1947, and July 14, 1947, respectively.   At his death the deceased was eighty-three years of age.   Until the summer of 1947 he lived alone in his home in Attleboro. For two months during that summer he was a patient in the

Pondville hospital, and from the middle of September, 1947, until his death he lived in a convalescent home conducted by a relative in Portsmouth, Rhode Island. There was no evidence, however, that his mental faculties were impaired. Shortly prior to entering the hospital the deceased turned over the bank books of the three accounts to the respondent. From that time until his death his financial affairs, such as the payment of bills and the like, were cared for by the respondent. Some months after the possession of the bank books had been given to the respondent, the deceased requested the return of two, The Attleborough Savings Bank and the Attleboro Trust Company books, and the respondent gave them to him. These remained in his possession until his death. Down to that time the respondent never made any withdrawals from these accounts. The book of the First National Bank of Attleboro has been in the respondent's possession ever since it was turned over to him and he made withdrawals on the account from time to time for the purpose of paying the expenses of the deceased.

The ultimate finding of the judge was that "from relationship and services rendered and personal affection for Cornelius O'Brien, the said Cornelius O'Brien had such faith in his nephew Jerome E. O'Brien that he opened these several bank accounts with him, to look after him during his life, and intended that said Jerome E. O'Brien should have what was left of these . . . accounts after his death."

The effect of this finding is that the deceased in creating the joint accounts gave a present interest in them to the respondent which would ripen into full ownership of the balance at the deceased's death. *Goldston* v. *Randolph*, 293 Mass. 253. *MacLennan* v. *MacLennan*, 316 Mass. 593, 597. *Zambunos* v. *Zambunos*, 324 Mass. 220, 223. This finding is not plainly wrong, and is not vitiated by any of the subsidiary findings. The fact that the deceased reacquired possession of two of the books and retained them until his death was not necessarily inconsistent with the existence of a completed gift. *Battles* v. *Millbury Savings Bank*, 250 Mass. 180, 187. *Kittredge* v. *Manning*, 317 Mass. 689,

692. The transactions under which the joint accounts were created are to be taken at their face value unless the evidence shows that they were not so intended. *Malone* v. *Walsh,* 315 Mass. 484, 491. *Kittredge* v. *Manning,* 317 Mass. 689, 692–693. True, there was testimony which tended somewhat in the opposite direction, but the judge could disbelieve it.

*Decree affirmed.*