ISABELLA BURNS *vs.* ELIZABETH PAQUIN & another.

Bristol.   December 5, 1962. — January 10, 1963.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Trust,* Of personal property, Revocation.

Evidence of the circumstances in which, subsequent to the creation of a
valid revocable trust of a savings bank account by the depositor for the
benefit of a friend, the depositor changed the account to a joint account
of the depositor and a third person for convenience in making with-
drawals of money from the account for the depositor did not warrant a
conclusion that, in making the change indicating on its face a revocation
of the trust, the depositor nevertheless actually intended not to revoke,
but to perpetuate, the trust; and upon the depositor's death the friend
was not entitled to the proceeds of the account.

BILL IN EQUITY filed in the Superior Court on August 1,
1960.

The suit was heard by *Dewing,* J.

*John J. Harrington* for Elizabeth Paquin.

*William A. Torphy,* for the plaintiff, submitted a brief.

CUTTER, J.   By this bill in equity Mrs. Burns seeks to
compel Mrs. Paquin to turn over to her a savings bank book
and to require the defendant Union Savings Bank to pay to
her the proceeds of the savings account.   The trial judge
ordered that a final decree be entered in accordance with the
prayers in the bill.   From the final decree, Mrs. Paquin
appealed.   The evidence is reported.

The trial judge found the following material facts.   Mrs.
Burns had lived, from the age of nine months until she was
seven, with Mrs. Irene Downey, who was not related to her.
Sarah Moss, Mrs. Downey's aunt, lived in the household.
Mrs. Downey then had a savings bank account in her name
and that of Sarah Moss.[1]   After Mrs. Moss's death, Mrs.

---

[1] The evidence showed that this pre-1957 account stood in Mrs. Downey's
name as trustee for Sarah Moss and that on February 8, 1957, the account was
placed in the name, "Irene G. Downey, trustee for Isabella Burns."

Burns, on February 8, 1957, "at the request of Mrs. Downey, with whom she had kept a close relationship over the years, went to the . . . bank . . . [with] Mrs. Downey." The account was then altered so that it would be paid to Mrs. Burns in the event of Mrs. Downey's death. At the same time, Mrs. Downey signed a statement to the bank "that no written trust exists, and that said deposit and its dividends are payable to me on my order during my life, and after my death to . . . Isabella Burns and not to my" personal representative.

In 1958 Mrs. Downey became ill. Mrs. Burns had her admitted to a hospital and visited her each day during the three months of her stay. In March, 1959, Mrs. Downey was living at the house of Mrs. Paquin (who testified that she was Mrs. Downey's first cousin). Mrs. Burns continued to call on Mrs. Downey and to do errands for her. Mrs. Downey asked Mrs. Burns "if it was all right for her to allow [Mrs.] Paquin to withdraw money from the trust account as a matter of convenience." Thereafter Mrs. Paquin discovered from an officer of the bank that it would be necessary for Mrs. Downey to "sign a withdrawal slip each time she desired to withdraw any funds." Mrs. Downey indicated that she would prefer another arrangement because "[s]he didn't want to be bothered with that all the time." On March 6, 1959, "the [bank] officer arranged for the transfer of the trust account of Mrs. Downey for the benefit of [Mrs.] Burns to 'a joint account in the name of Irene Downey or Elizabeth Paquin.' The officer made no explanation to Mrs. Downey as to the right of survivorship to a joint account."

Mrs. Downey later in 1959 went to the hospital again. She died there on December 10, 1959. During the second hospital stay, Mrs. Burns continued to call on her and did errands for her. Two withdrawals of $150 each from the account were made by Mrs. Paquin prior to Mrs. Downey's death and two withdrawals were made by Mrs. Paquin thereafter.

The trial judge concluded that Mrs. Downey's illness led her "for the sole purpose of avoiding inconvenience on the

part of [Mrs.] Burns, who was a working woman, . . . [to sign] the order of March 6, 1959, purportedly to establish a joint account with [Mrs.] Paquin." The judge added that there was "evidence that leads the [c]ourt to believe that this action . . . was due to influence exerted by [Mrs.] Paquin and was not the free act of Mrs. Downey, who only wanted a convenient method of withdrawing funds if . . . occasion demanded."

1.  The judge's intimation that there was evidence of influence by Mrs. Paquin was not justified. We perceive no basis in the evidence for drawing such an inference and treat it as out of the case.

2.  It was permissible to prove by oral evidence that the joint deposit, shown upon the records of the bank, was created only as a matter of convenience and did not constitute, as between Mrs. Downey and Mrs. Paquin, a completed gift. See *Drain* v. *Brookline Sav. Bank,* 327 Mass. 435, 441; *Gaucher* v. *Planeta,* 338 Mass. 121, 124. See also *Corkum* v. *Salvation Army of Mass. Inc.* 340 Mass. 165, 167–168; Scott, Trusts (2d ed.) § 58.6. The judge was justified in concluding upon the evidence that the joint account was set up only for convenience, even though (a) the withdrawal of the trust account on March 6, 1959, was stated by the written withdrawal order to be "for the purpose of transferring this account to a joint account in the names of Irene Downey or Elizabeth Paquin," and (b) the new joint account was issued in the form "Elizabeth V. Paquin or Irene G. Downey." In the circumstances, that Mrs. Paquin retained possession of the new bank book did not by itself establish either that the joint account was for convenience only or that it was a gift of a joint interest to Mrs. Paquin.

The original deposit by Mrs. Downey, when Mrs. Burns and she went to the bank together on February 8, 1957, created a valid trust. *Cohen* v. *Newton Sav. Bank,* 320 Mass. 90, 92–93. See Scott, Trusts (2d ed.) §§ 58.1–58.4. The statement to the bank, signed at that time, indicates that the trust was revocable or terminable, in whole or in part, during Mrs. Downey's life by withdrawal of sums on

deposit.  When the trust account was closed and the new joint account was opened, Mrs. Downey in fact did what she would have done if she had intended to revoke the then existing trust.  As to this, Mrs. Burns testified merely that Mrs. Downey "asked me if . . . I would give my consent for Mrs. Paquin to draw out money on the bankbook," and that Mrs. Burns gave that consent.  She was not told what Mrs. Downey "wanted the money for."

The trial judge was not required to believe testimony of Mrs. Paquin and her daughter indicating that Mrs. Downey intended (see *Goldston* v. *Randolph,* 293 ·Mass. 253, 256–257; *Kittredge* v. *Manning,* 317 Mass. 689, 692–694) to make a gift to Mrs. Paquin of a joint interest in the savings account.  The contention that there was a gift gained some support, of course, from the bank officer's testimony that he had explained to Mrs. Downey that if either joint depositor "had the book at the time it was presented to the bank . . . [the bank] would have to honor . . . [a] request for withdrawal."  On the other hand, the officer's testimony that he had not explained to Mrs. Downey the right of survivorship (read with the testimony of Mrs. Burns) invites speculation whether Mrs. Downey really intended to revoke or terminate the revocable trust theretofore existing for the benefit of Mrs. Burns (after Mrs. Downey's life interest).

The ordinary consequence of Mrs. Downey's transfer of the trust account to the new joint account would be to revoke the trust.  The transfer would destroy the arrangement with the bank, the terms of which gave rise to the trust.  See the suggestion in *Kittredge* v. *Manning,* 317 Mass. 689, 692, that a transaction changing a deposit was to be "taken at its face value unless the evidence shows that it was not so intended."  See also Restatement 2d: Trusts, § 58, comment c.  Cf. Restatement 2d: Trusts, § 330, comment i; Scott, Trusts (2d ed.) § 330.7.  The transfer of the account thus is strong evidence of intention to revoke the existing trust.  The other evidence summarized above gives rise only to conjecture and surmise.  It does not serve to show that Mrs. Downey at the time of the transfer of the

account had any intent to perpetuate the trust for Mrs. Burns.

There is no occasion for us to determine the respective rights in the account of Mrs. Paquin and Mrs. Downey's estate.

3. The final decree is reversed. The bill is to be dismissed.

*So ordered.*