ALOYZAS ASTRAVAS, executor, *vs.* ANTENA PETRONIS.

Worcester.   December 9, 1971. — March 8, 1972.

Present: TAURO, C.J., CUTTER, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Gift. Joint Tenants. Personal Property,* Joint tenancy.

Upon a petition to determine the ownership of three joint bank
   accounts, where there was evidence that the testatrix was the
   respondent's godmother and had been a close friend of the respond-
   ent's mother; that the respondent visited the testatrix regularly,
   took her to lunch, did her errands and took her for rides; that when
   the testatrix was in a nursing home the respondent visited the
   testatrix at least three times a week; and that, with respect to
   the three accounts in controversy, the testatrix caused them to be
   put in the name of herself and the respondent as joint tenants pay-
   able "to either or the survivor"; the testatrix delivered the three
   bank books to the respondent stating, "I give you these as a gift,"
   and the books thereafter remained in the respondent's possession
   until the testatrix's death, except in several instances when the
   testatrix requested some money for personal expenses, it was held
   that the finding of the judge that there was a delivery of the books
   to the respondent coupled with an intent to give the respondent a

present interest in the accounts was not plainly wrong and a decree adjudging that the respondent was the rightful owner of the accounts was proper. [370–372]

PETITION IN EQUITY filed in the Probate Court for the county of Worcester on July 20, 1970.

The case was heard by *Wahlstrom,* J.

*Maria L. Sveikauskas* for the petitioner.

*C. Edward Rowe* for the respondent.

HENNESSEY, J.  This petition was brought by the executor of the estate of Veronika Latvenas to determine ownership of three bank accounts.  At the time of the testatrix's death, the accounts, totaling approximately $30,000, stood in the names of the testatrix and the respondent "payable to either or the survivor."  The petitioner appeals from a final decree ruling that the respondent is the rightful owner of the three accounts.

Since the case is before us on a report of material facts and a report of the evidence, all questions of law, fact and discretion are open for our decision.  We can find facts not expressly found by the judge and, if convinced that he was plainly wrong, we can find facts contrary to his findings.  *Lowell Bar Assn.* v. *Loeb,* 315 Mass. 176, 178 and cases cited.  We emphasize, however, that where oral evidence is conflicting the judge is in the best position to determine the credibility of the witnesses. *Barnum* v. *Fay,* 320 Mass. 177, 180.

The facts are here set forth, as determined by us from the reported evidence and the report of material facts. The testatrix, a widow, died on May 17, 1970, at the age of eighty-four.  She had emigrated from Lithuania at an early age and made her home in Athol.  At her death, she had several relatives in Lithuania, a nephew in California, and another nephew, the petitioner, who resided in Melrose.  For a period of some thirty-five years, the testatrix was employed as a domestic in the home of a prominent Athol industrialist.  She was a very intelligent person, and she was conscientious and thrifty with her earnings. She contributed generously to her relatives, her church

and various other religious organizations. She also
assisted some of her personal friends financially. The
evidence indicates that she made gifts of money to the
petitioner and his children on numerous occasions and for
various purposes.

The relationship between the testatrix and the respond-
ent, the surviving joint owner, was a close one. The
testatrix was her godmother and had been a close friend
and companion of her mother. She visited the testatrix
regularly, accompanied her to church, did her errands
or went shopping with her and took her for leisurely
rides. When the testatrix was ill, she took her to the
doctor's office and, when she was hospitalized, visited her
daily. In the testatrix's later years she was in a nursing
home where the respondent visited her at least three times
a week. Although the testatrix never had any children of
her own, the evidence supports the finding that she
treated the respondent as her own child. With respect to
her financial affairs the evidence indicates that with the
exception of a few instances of short duration, the testa-
trix placed her savings in joint accounts bearing her
name and that of a friend or acquaintance. She followed
this procedure for a period of almost thirty years. In
1964, the testatrix executed a will which was later re-
voked by a second will dated November 29, 1966, in which
the petitioner was named executor. On that same day,
the testatrix transferred several of her joint accounts
into the joint names of herself and the petitioner and in-
structed him to keep the bankbooks in a safe deposit box.

Subsequently, the petitioner returned the bankbooks to
the testatrix at the latter's request. The testatrix then
asked the respondent to accompany her to the three banks
and there instructed the teller to change the accounts so
as to provide that they be held by the testatrix and the
respondent as joint owners, "payable to either or the
survivor." The evidence supports the finding that the
testatrix in delivering these three books to the respon-
dent stated, "I give you these as a gift" or words of
similar import. At that same time, the testatrix requested

that the respondent use the funds to pay for the testatrix's funeral. The evidence further indicates that, after the delivery of the bankbooks, the respondent retained possession of them until the testatrix's death, except for several instances, when the testatrix requested some money for some personal expenses.

On this evidence, the judge found that as to the bank accounts held in the joint names of the testatrix and certain friends and acquaintances, there was neither delivery nor an intent to make a gift of the accounts in those instances. While we disagree with his finding that there was no delivery, the evidence does support his finding that there was no donative intent in those transactions. Similarly, as to the transfer of the accounts into the joint names of the testatrix and the petitioner, the evidence supports the judge's finding that the testatrix did not intend to make a gift of the money in the accounts at that time. Finally, as to the accounts which are the subject of this controversy, the judge found that there was both a delivery and an intent to give the respondent a present interest in those accounts and ruled that the respondent was their rightful owner.

The sole question for us to determine is whether or not upon the evidence relative to the circumstances of the opening of these joint accounts the judge was warranted in finding that there was a present completed gift at the time that the respondent's name was added to the accounts. After a careful review of the record and mindful of the rule that the judge was in the best position to determine the credibility of the witnesses, we conclude that his finding was correct.

The law on the subject of joint accounts in Massachusetts has been repeatedly stated over the years. *DePasqua* v. *Bergstedt,* 355 Mass. 734, 736 and cases cited. A change in a deposit to the joint account of the former owner and another "would operate as a present and complete gift in joint ownership if she clearly intended such a result." *Coolidge* v. *Brown,* 286 Mass. 504, 507. *Goldston* v. *Randolph,* 293 Mass. 253, 256. Such a present gift

could be made even if the former owner retained a right
to withdraw funds from the account. *Coolidge* v. *Brown,*
286 Mass. 504, 507. It is well established, however, that
"while the contract of deposit is conclusive as between the
parties and the bank . . . nevertheless, as between the
survivor and the representative of the estate of the
deceased, it is still open to the latter to show by attendant
facts and circumstances that the deceased did not intend
to make a present completed gift of a joint interest in
the account," *Ball* v. *Forbes,* 314 Mass. 200, 203–204, or
that the joint account "was created only as a matter of
convenience and did not constitute . . . a completed gift."
*Burns* v. *Paquin,* 345 Mass. 329, 331.

Our review of the evidence leads us to the conclusion
that the judge was not plainly wrong in finding that the
transfers here in question were a gift. The evidence
clearly establishes that the testatrix and the respondent
enjoyed a long and close friendship. The testatrix was
the respondent's godmother. In later years when the
testatrix was in failing health, the two women drew
closer. According to one witness, the testatrix, in refer-
ring to the respondent said, "She does things for me
better than a daughter. If I didn't have her, I don't know
what I'd do." There was other evidence to support the
finding that in her later years the testatrix expressed
disappointment and disapproval of the manner in which
the petitioner lived and the way in which he was rearing
his children. The judge warrantably found that this dis-
appointment in the petitioner motivated the change which
the testatrix made in her bank accounts. With respect to
the transactions giving rise to the gift, the evidence indi-
cates that the testatrix physically delivered the books to
the respondent and, at the same time, stated that the ac-
counts were given as a gift. On this evidence alone, the
judge's finding was warranted.

The petitioner, however, argues that certain facts ex-
isting in the record render the judge's finding plainly
wrong. He directs our attention to the fact that the
testatrix had always placed her money in joint accounts

as a matter of convenience and that the transfers to the respondent were of a similar nature. We disagree. While evidence of what the testatrix did in earlier years with respect to her financial affairs is relevant on the question of determining her intent in making the transfers involved here, such evidence is not controlling. The judge could warrantably find, as he did, that the earlier transactions differed from those here in that in the former no gift was intended by the testatrix nor did any joint owner believe otherwise. Furthermore, unlike the earlier accounts, the transfers to the respondent were accompanied by the physical delivery of the books.

There is also no merit to the petitioner's argument that the judge's finding was plainly wrong in view of the testimony of a witness that the testatrix explained to him that the transfers were made because she was in failing health and the respondent, unlike the petitioner, lived much closer to her should she require any money from the accounts. The judge was not required to believe the latter testimony and he obviously did not.

The petitioner also argues that a gift to the respondent was not intended by the testatrix because of the fact that she retained the right to withdraw funds from the accounts and, in fact, did make a withdrawal on at least one occasion. We have in the past, however, ruled that the reservation of a right to withdraw funds does not affect the validity of the gift. *Coolidge* v. *Brown*, 286 Mass. 504, 507. Similarly, the fact that the respondent testified that she never withdrew any money from the accounts without asking for permission to do so from the testatrix does not prevent the gift from taking effect. In view of other testimony of the respondent that she understood the transfers to be a gift, and keeping in mind the close relationship existing between these two women, such a request may have been nothing more than a thoughtful gesture from one who greatly respected the testatrix. See *Mikshis* v. *Palionis*, 345 Mass. 316, 320. Furthermore, the gift, made in the lifetime of the testatrix, was of a present interest in the accounts which did

not ripen into full ownership until the testatrix's death. *Goldston* v. *Randolph,* 293 Mass. 253, 257.

*Decree affirmed.*