MARIE ANGE ANNETTE BLANCHETTE *vs.*
ROBERT L. BLANCHETTE.

Essex. April 6, 1972. — September 19, 1972.

Present: TAURO, C.J., SPIEGEL, REARDON, QUIRICO, BRAUCHER, &
HENNESSEY, JJ.

*Gift. Joint Tenants. Personal Property*, Joint tenancy.

In a suit in equity by a woman against her divorced husband to determine ownership of stock purchased by him and placed in both their names as "Joint Tenants," a conclusion that the husband had made his wife a present gift of a joint interest in the stock, under which he was to have sole control during his life and whatever might remain at his death would then become fully owned by her if she should survive him, was warranted by the subsidiary findings of a master, including a finding that the husband had

told his wife that he had put the stock in both their names as joint tenants "in case something happened" to him and that the stock would then be hers "without probate or lawyer"; the husband, by contesting the suit, indicated his intent to exercise his right of control, and the final decree, declaring that the stock was the sole property of the husband and ordering his wife to execute any documents necessary to give effect to his ownership, was affirmed without modification. [519–523]

Discussion of rights in personal property held in joint tenancy. [523–526]

PETITION IN EQUITY filed in the Probate Court for the county of Essex on February 19, 1970.

The case was heard by *Pettoruto*, J., on a master's report.

*Joseph P. McKay* for the petitioner.

*John J. Jennings* for the respondent.

BRAUCHER, J. This is a petition brought in connection with the divorce of the parties by the petitioner Marie to determine her interest in certain property including 168 shares (the stock) of the American Telephone & Telegraph Company (the company). The petition was referred to a master who heard the parties, filed a report, and made general findings, among others, that the respondent Robert was the sole owner of the stock and that there was no gift or attempted gift of the stock to Marie.

Marie objected to that part of the report which related to the stock. After a hearing, the judge issued a decree overruling Marie's exceptions, confirming the report, declaring the stock to be the sole property of Robert and ordering Marie to execute any documents necessary to give effect to the ownership of the stock, as determined by the decree, upon the records of the company. Marie appeals from the decree, contending that the subsidiary facts reported by the master do not support his general findings with respect to the ownership of the stock.

The master's report having been confirmed, his findings establish the facts in the case. *Foot* v. *Bauman*, 333 Mass. 214, 219. *Flynn* v. *Seekonk*, 352 Mass. 71,

72. We summarize them. The parties were married on November 17, 1945. While married they both worked, with a few interruptions, at steady jobs. In 1955 Robert was working for the company, and under a company plan began to buy shares of stock in the company at eighty-five per cent of market value through a weekly deduction from his pay.

Robert wanted to avoid the expense of probate and legal proceedings if he should die. When he expressed this desire in connection with the stock purchase plan to the people where he worked, he was told that the only way to achieve it was to have the stock issued to himself and Marie as joint tenants. The stock could have been issued to the parties as tenants in common, but Robert purposely avoided that option.

When he started to acquire the stock, he told Marie he put them in both their names as joint tenants "in case something happened" to him and that they would then be hers "without probate or lawyer." The certificates were issued at his request to "Robert L. Blanchette & Mrs. Marie A. Blanchette, Joint Tenants." He executed assignments to himself and Marie "as Joint Tenants with rights of survivorship and not as Tenants in Common," and she also signed some of the documents in this form. The last certificate was issued on June 30, 1964.

Marie took no part in the purchase of the stock and did not know when the stock certificates were issued or how many shares were acquired. Her impression was that they would be hers only after Robert's death, and she did not think she had the right to sell any interest in them or to do anything with them without his signature. She signed dividend checks; on many occasions Robert signed her name to the checks. Robert never told her that she owned half of the stock. The certificates were kept in a wardrobe in their bedroom when they separated on February 7, 1965, and at that time Marie did demand one of two bankbooks usually kept in the same place, but she did not ask for any

of the stock. She was content with the bankbook. There is no finding that she made any claim to the stock before the parties' divorce on May 14, 1969.

The master's general findings included the following: Robert "never at any time indicated by conduct or words that he intended to transfer any present interest in these stocks to his wife." The words "Joint Tenants" were used "only because this form of issuance was the only one authorized by Robert's employer which approximated his desire to make his wife 'his beneficiary' if he died. Robert did not in any way attempt to make a gift of these stocks to his wife and no gift of these stocks was in fact made."

1. The master's findings must stand unless they are inconsistent, contradictory or plainly wrong. *Crowley* v. *J. C. Ryan Constr. Inc.* 356 Mass. 31, 34. *Gil-Bern Constr. Corp.* v. *Medford,* 357 Mass. 620, 623. We have applied to share certificates in joint names the same principles we have applied to joint bank accounts. *Graham* v. *Barnes,* 259 Mass. 534, 538. *Barnes* v. *Chandler,* 277 Mass. 395, 398. *Castle* v. *Wightman,* 303 Mass. 74, 77–78. *Berry* v. *Kyes,* 304 Mass. 56, 61–62. *MacLennan* v. *MacLennan,* 316 Mass. 593, 597. *Zambunos* v. *Zambunos,* 324 Mass. 220, 223. *Doucette* v. *Doucette,* 361 Mass. 156, 157–158. *Miles* v. *Caples, ante,* 107, 112–115. In disputes arising while both parties to a joint bank account are still alive we have frequently upheld allegations or findings that there was no donative intent. *Bradford* v. *Eastman,* 229 Mass. 499, 501. *Moreau* v. *Moreau,* 250 Mass. 110, 113. *R. H. White Co.* v. *Lees,* 267 Mass. 112, 115. *Bedirian* v. *Zorian,* 287 Mass. 191, 196. *Gibbons* v. *Gibbons,* 296 Mass. 89, 90–91. *Campagna* v. *Campagna,* 337 Mass. 599, 604. *Doucette* v. *Doucette, supra,* at 157–158. A finding as to the respective interests of the parties in joint deposits during their lives is a pure question of fact. *Milan* v. *Boucher,* 285 Mass. 590, 594 (husband and wife "equally interested"). *Greeley* v. *Flynn,* 310 Mass. 23, 27–28 (revocable trust for donee). *Drain* v. *Brookline Sav. Bank,* 327 Mass.

435, 441 (gift subject to withdrawal by donor).

Share certificates are less likely than bank accounts to be put in joint names merely for convenience, and in two cases we have disapproved findings that share certificates were placed in joint names without donative intent. *MacLennan* v. *MacLennan,* 316 Mass. 593, 597. *Zambunos* v. *Zambunos,* 324 Mass. 220, 223. Compare *McPherson* v. *McPherson,* 337 Mass. 611, 614 (real estate); *Goldman* v. *Finkel,* 341 Mass. 492, 494 (real estate). In both of those cases, as in this one, the intention was clear that the husband was to have sole control during his life and that whatever should remain at his death, if the wife survived, should ripen into full ownership by her. The finding that no present gift was intended would logically have the effect of frustrating the intention of the parties by rendering their arrangement testamentary and void. We avoided that result by substituting a finding of an intention to make a present gift of a joint interest, with the effect intended by the parties. In effect, there was a present gift of a future interest, subject to a reserved life estate in the husband and to his power to revoke his wife's interest. The result was based on our duty to draw proper inferences from the subsidiary findings unaffected by the conclusions of the trier of fact. We have the same duty in reviewing the subsidiary findings and conclusions of a master. *Robinson* v. *Pero,* 272 Mass. 482, 484, and cases cited. *International Tel. & Tel. Corp.* v. *Hartford Acc. & Indem. Co.* 357 Mass. 282, 287, and cases cited.

We think, however, that it is not necessary to modify the decree here, as was done in the *MacLennan* and *Zambunos* cases, to declare that the certificates are held in joint account, subject to the right of control reserved by the respondent. By contesting this suit the respondent has fully manifested his intention to exercise his right of control, and he has been prevented from doing so by the pendency of the suit. The decree does substantial justice, and a modification would be purely

formal except so far as it might permit intervening events to affect unjustly the rights of the parties. Compare *White* v. *White*, 346 Mass. 76, 79–80. To the extent that the *MacLennan* and *Zambunos* cases would require modification, therefore, we overrule those cases. The decree is to be affirmed without modification.

2. To avoid misunderstanding, we emphasize that nothing we say here is intended to impair the right of the survivor to joint bank accounts or to share certificates in joint names, where the donor has died without manifesting an intention to defeat the gift. If the owner of funds, with the assent of another, deposits the funds in an account in both their names, payable to either or the survivor, the deposit if so intended may take effect as a novation, creating contract rights against the bank in both parties in accordance with the deposit agreement. The statute of wills is not involved. As between the bank and the named depositors, the deposit agreement is binding. G. L. c. 167, § 14. *Sawyer* v. *National Shawmut Bank*, 306 Mass. 313, 316.

The effect of such a deposit is a present and complete gift of the contract right intended, and it is not fatal that the original owner of the funds retains possession of the bankbook and a right to withdraw funds from the account and thus to defeat the gift. In numerous cases where the original owner had died, we have upheld the right of the survivor to the balance in the account.[1] We have not regarded the form of the account as con-

[1] *Chippendale* v. *North Adams Sav. Bank*, 222 Mass. 499, 501–503. *Perry* v. *Leveroni*, 252 Mass. 390, 393. *Chase* v. *Smith*, 257 Mass. 252, 253. *McKenna* v. *McKenna*, 260 Mass. 481, 484–485. *Brodrick* v. *O'Connor*, 271 Mass. 240, 245–246. *Kentfield* v. *Shelburne Falls Sav. Bank*, 273 Mass. 548, 550–551. *Holyoke Natl. Bank* v. *Bailey*, 273 Mass. 551, 554–556. *Rockefeller* v. *Davenport*, 277 Mass. 105, 107–108. *Barnes* v. *Chandler*, 277 Mass. 395, 399–401. *Splaine* v. *Morrissey*, 282 Mass. 217, 221–223. *Coolidge* v. *Brown*, 286 Mass. 504, 507–508. *Goldston* v. *Randolph*, 293 Mass. 253, 256–257. *Batal* v. *Buss*, 293 Mass. 329, 331–332. *Murphy* v. *Donovan*, 295 Mass. 311, 314–315. *Murphy* v. *Nally*, 301 Mass. 329, 332. *Sullivan* v. *Hudgins*, 303 Mass. 442, 444–445. *Malone* v. *Walsh*, 315 Mass. 484, 491–492.. *Kittredge* v. *Manning*, 317 Mass. 689, 692–694. *Armstrong* v. *O'Brien*, 329 Mass. 572, 574–575. *Schott* v. *Boston Safe Deposit & Trust Co.* 355 Mass. 562, 567. *DePasqua* v. *Bergstedt*, 355 Mass. 734, 736–737. *Astravas* v. *Petronis*, 361 Mass. 366, 369–372.

clusive between the parties, but have allowed the representative of the estate of the decedent to show by attendant facts and circumstances that the decedent did not intend to make a present completed gift of a joint interest in the account. Thus we have upheld findings of undue influence. *Eddy* v. *Eddy,* 281 Mass. 156, 163–164. *McDonald* v. *MacNeil,* 300 Mass. 350, 352–354. Compare *Burns* v. *Paquin,* 345 Mass. 329, 331; *Miles* v. *Caples, ante,* 107, 112–114. It may be shown that the transaction is a fraud on creditors. See *Splaine* v. *Morrissey,* 282 Mass. 217, 223; *Ross* v. *Ross,* 329 Mass. 644, 648. The donee may take subject to a trust. *Lukey* v. *Parks,* 279 Mass. 244, 248. *Greeley* v. *O'Connor,* 294 Mass. 527, 533. See *Greeley* v. *Flynn,* 310 Mass. 23, 27–28. Compare *Reynolds* v. *Reynolds,* 325 Mass. 257, 261. Or the account may have been established merely for convenience in paying medical bills or the like. See *Burns* v. *Paquin,* 345 Mass. 329, 331; *Astravas* v. *Petronis,* 361 Mass. 366, 370; *Miles* v. *Caples, ante,* 114–115. In cases of conflicting evidence we have required that the question of donative intent be submitted to the trier of fact. *Battles* v. *Millbury Sav. Bank,* 250 Mass. 180, 188. *Ball* v. *Forbes,* 314 Mass. 200, 205. The burden of proof is on the person seeking to show that the transaction is not to be taken at face value. See *Drain* v. *Brookline Sav. Bank,* 327 Mass. 435, 441; *DePasqua* v. *Bergstedt,* 355 Mass. 734, 736. Where as in the present case the intention has been clear that the donee's interest was to ripen into full ownership on the donor's death, we have overturned findings that there was no donative intent. *Malone* v. *Walsh,* 315 Mass. 484, 490–492. *DePasqua* v. *Bergstedt, supra.*

3. We recognize that under the cases cited the arrangement of the parties provides a substitute for a will. But we see no harm in that. "If an owner of property can find a means of disposing of it inter vivos that will render a will unnecessary for the accomplishment of his practical purposes, he has a right to employ it. The fact that the motive of a transfer is to obtain

the practical advantages of a will without making one is immaterial." *National Shawmut Bank* v. *Joy,* 315 Mass. 457, 471–472, and cases cited. See *Second Bank-State St. Trust Co.* v. *State Tax Commn.* 337 Mass. 203, 210; *Boston Safe Deposit & Trust Co.* v. *State Tax Commn.* 346 Mass. 100, 103. An unattested testamentary document is ineffective. *Reynolds* v. *Reynolds,* 325 Mass. 257, 260–261. *Day Trust Co.* v. *Malden Sav. Bank,* 328 Mass. 576, 579. But a trust is not rendered invalid by a testamentary motive. "The underlying purpose of the statute of wills against fraud is secured in the formalities attendant upon the execution of trusts and the solemnity of the actual transfer of property to trustees." *Second Bank-State St. Trust Co.* v. *Pinion,* 341 Mass. 366, 371. In cases of informal declarations of trust we have sought substitute safeguards in notice to and informal acceptance by the beneficiary. *Aronian* v. *Asadoorian,* 315 Mass. 274, 276–277, and cases cited. *Mikshis* v. *Palionis,* 345 Mass. 316, 318–319. Compare *Corkum* v. *Salvation Army of Mass. Inc.* 340 Mass. 165, 167–168; *Cooney* v. *Montana,* 347 Mass. 29, 36–37. Contractual arrangements vary in their formality. See *Krell* v. *Codman,* 154 Mass. 454, 457–458 (voluntary covenant to pay money after death); *Hale* v. *Wilmarth,* 274 Mass. 186, 189–190 (partnership agreement under seal); *Legro* v. *Kelley,* 311 Mass. 674, 676–677 (contract to transfer stock on death); *Massachusetts Linotyping Corp.* v. *Fielding,* 312 Mass. 147, 149–150 (contract not to change beneficiary of life insurance); *Bettencourt* v. *Bettencourt, ante,* 1, 5–10, (mutual wills reciting agreement). In the present case, as in many cases of joint bank accounts, the parties were designated as joint tenants in formal documents embodying the rights in dispute, and there was notice to and implied acceptance by the donee.

Our law in this situation is in harmony with that in many other States. "The formal requisites of wills serve two main purposes: to insure that dispositions are carefully and seriously made, and to provide relia-

ble evidence of the dispositions. Those purposes are adequately served by the institutional setting and the signed writing normally involved in taking out insurance, opening a bank account, buying United States Savings Bonds, or entering a goverment pension system." 1951 Rep. N. Y. Law Rev. Commn. 587, 597. In a very large number of cases joint bank accounts have been given effect as a "poor man's will." *Estate of Michaels,* 26 Wis. 2d 382, 394–398. See *Miles* v. *Hanten,* 83 S. D. 635, 639; Scott, Trusts (3d ed.) § 58.6; annotation, 43 A. L. R. 3d 971. Similar principles have been applied to share certificates in joint form. *Frey* v. *Wubbena,* 26 Ill. 2d 62, 65–71. *In re Estate of Pokorney,* 93 Ill. App. 2d 174, 176–177. *Estate of Marans,* 141 Mont. 32, 49–50. *Parkhurst Estate,* 402 Pa. 527, 531–532. *Nachman* v. *Nachman,* 417 Pa. 389, 392–394. Compare *Kuebler* v. *Kuebler,* 131 So. 2d 211, 215 (Dist. Ct. App. Fla.). "The revocable living trust and the multiple-party bank accounts, as well as the experience with United States government bonds payable on death to named beneficiaries, have demonstrated that the evils envisioned if the statute of wills is not rigidly enforced simply do not materialize." Comment, Uniform Probate Code, § 6–201, promulgated in August, 1969. See also §§ 6–103 (a), 6–104 (a).

*Decree affirmed.*