ROOSEVELT FEDERAL SAVINGS &
LOAN ASSN., Plaintiff-Respondent,

v.

FIRST NATIONAL BANK OF CLAY-
TON et al., Defendant-Appellant.

No. 40645.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 24, 1981.

Robert C. Jones, Clayton, for defendant-appellant.

Gregory F. Hoffmann, St. Louis, for plaintiff-respondent.

SMITH, Presiding Judge.

This case reaches the writer on reassignment. First National Bank of Clayton (Bank) appeals from the judgment of the trial court in an interpleader case brought by Roosevelt Federal Savings and Loan Association (Roosevelt). A recitation of the facts is necessary to present the issues raised on appeal.

In October, 1972, Leona Feinstein and Morris Feinstein opened a joint account, numbered 180–2741 with Roosevelt. In January, 1973, Leona Feinstein transferred $20,000 from that account into an account with Roosevelt numbered 780–0201 in the joint names of Leona and Morris and Dennis Kneff. The terms of that account directed Roosevelt to act pursuant to the signature of any one or more of the joint-tenants. In May, 1973, Bank notified Roosevelt that Dennis Kneff had pledged savings certificate number 780–0201 to it as collateral security for a loan. Roosevelt "accepted" in writing that notice. In October, 1974, Kneff closed account number 780–0201 and transferred the funds to an individual account in his name bearing number 780–0800. This account was evidenced by a non-negotiable certificate of deposit. This account was also with Roosevelt. At the same time Bank advised Roosevelt in writing that it was releasing its security interest in account number 780–0201 on condition that Roosevelt "record our assignment on a new certificate in similar amount." That release and condition was accepted in writing by Roosevelt and the account card on 780–0800 of Roosevelt reflects "pledged collateral at 1st Nat'l CL." That account card, bearing Kneff's signature, contained the following term:

"Withdrawals may not be made on account of such items until collected, and any item not collected, whether received for cash or for payment to this account or for collection, or otherwise, may be charged back to this account . . . ."

Commencing in September, 1974, Kneff issued seven insufficient checks to Roosevelt. One of these checks predated the change in accounts. Commencing in November, 1974, Roosevelt began charging the amounts back against account number 780–0800. The total amount of these chargebacks was $9,368.71. In October Bank notified Roosevelt it was foreclosing account number 780–0800 because of Kneff's default on the loan secured by that account. In May, 1976, Leona Feinstein notified Roosevelt that litigation was pending in St. Louis County Circuit Court against Kneff involving the Feinstein Family Trust. The letter also stated that Kneff was a co-trustee and that an accounting was being sought which might affect Kneff's deposit

account. The letter instructed Roosevelt not to permit withdrawals from the account.

In July, 1976, Roosevelt filed this interpleader action against Bank and Leona Feinstein requesting authority to pay $11,244.29 (the amount left in the account after Roosevelt's charge-backs) into the registry of the court for determination by the court of who was entitled to the funds.

Both Feinstein and Bank filed answers denying the propriety of interpleader. Each also filed a counterclaim. Bank's counterclaim sought $15,340.32 plus interest as the amount due and owing on Kneff's defaulted loan. The judgment of the court granted the interpleader, awarded Roosevelt $1,000 for its attorney's fees, awarded Bank the remainder of the $11,244.29 after deduction of Roosevelt's costs and attorney's fees, dismissed Bank's counterclaim, and denied any relief to Feinstein. Only the Bank appealed.

Here Bank raises three contentions i. e.: (1) the court erred in sustaining the petition for interpleader, (2) the court erred in awarding Roosevelt an attorney's fee, and (3) the court erred in dismissing Bank's counterclaim.

■ Bank bases its first contention on Section 369.174, RSMo 1969 which protects a savings and loan association from liability to a joint tenant where it pays out money in a joint account to another joint tenant. It is contended that the provisions of that section made any claim by Mrs. Feinstein frivolous so that Roosevelt could not have been subject to double or multiple liability. We dealt with a similar contention in *General American Life Insurance Co. v. Wiest*, 567 S.W.2d 341 (Mo.App.1978). As pointed out there, the only two requirements for an interpleader action are (1) that persons have claims against the party and (2) that those claims are of such nature that the party may be exposed to double or multiple liability. *General American Life Insurance Co. v. Wiest, supra*, [1]; *State ex rel. Creswell v. Scott*, 491 S.W.2d 343, 345 (Mo.App. 1973). We cannot conclude that the Feinstein claim was so devoid of merit on its

face that Roosevelt could with safety pay the funds in the account over to Bank. Roosevelt was threatened by the Feinsteins with a lawsuit which could affect the disposition of the funds in its hands. It was not required to determine the merits of that suit, or of the underlying claim.

"Thus, the right to interpleader depends upon whether the stakeholder has a good faith fear of adverse claims, regardless of the merits of those claims or whether the stakeholder himself believes them to be meritorious." *General American Life Insurance Co. v. Wiest, supra*, footnote 1.

■ Nor does the fact that Roosevelt claimed an interest in a portion of account number 780–0800 prevent the interpleader. Unlike common law interpleader, under the present rule it is not necessary that the party seeking interpleader be an "innocent stakeholder." He may seek interpleader even if he contends he is "not liable in whole or in part to any or all of the claimants." Rule 52.07, Sec. 507.060, RSMo 1978. The court did not err in allowing the interpleader.

■ Bank next contends that the court erred in awarding Roosevelt an attorney's fee of $1,000. Where the stakeholder claims and litigates an interest in the funds in his possession the award of an attorney's fee is discretionary with the trial court. *Beaufort Transfer Co. v. Fischer Trucking Co.*, 357 F.Supp. 662, 671–72 (E.D.Mo.1973) [21]. However, such an award must be limited to a reasonable fee to prepare and file the interpleader action itself and may not include services rendered on behalf of the stakeholder in his capacity as a claimant of all or a portion of the fund. *Beaufort Transfer Co. v. Fischer Trucking Co., supra*, [18–20] at 671. The trial court did not specify for what it was awarding the fee. The fee appears to be generous if restricted to services for Roosevelt as a stakeholder and penurious if granted for all services rendered to Roosevelt. In view of the action we take in reversing and remanding on Bank's final point it is unnecessary for us to

determine whether the award made should be reduced. The evidence presented in support of the fee does appear to include work which would not be properly chargeable against the fund but we cannot tell from the record whether the court included such work in making the fee award. With the guidelines we have heretofore set forth, this matter can be more fully developed on remand.

We turn to Bank's final point. Its contention is that the lien of the bank takes priority over the contractual chargebacks of Roosevelt for insufficient funds checks, and that therefore the full amount of Kneff's defaulted loan plus interest should be paid from account 780–0800. Roosevelt, on the other hand, contends that its contract with Kneff combined with the provisions of Sec. 369.154(2)[1] create a lien in it from the time the account is opened and that subsequently incurred debts of the account owner to Roosevelt become first liens against the account. Roosevelt does not challenge the validity of Bank's collateral interest in the account and Bank does not dispute the general right of Roosevelt to charge-back or set off debts of Kneff against the account. The dispute concerns the priority of these respective liens.

Initially we reject Roosevelt's argument that this case is controlled by Sec. 400.9–318 RSMo 1978.[2] Section 400.9–104 specifically provides that Article 9, of which 400.9–318 is a part, does not apply "to a transfer in whole or in part of any of the following: ... any deposit, savings, passbook or like account maintained with a bank, savings and loan association, credit union or like organization."

The right of setoff of a financial institution is stated in *Kaw Valley State Bank & Trust v. Commercial Bank of Liber-ty*, 567 S.W.2d 710 (Mo.App.1978) [5, 6] as follows:

"Subject to exceptions inapplicable here, a bank may set off deposits in its hands against the *matured indebtedness* of its depositor. This right grows out of the debtor and creditor relationship existing between the bank and its depositor and the bank has the right to apply a deposit to payment of the depositor's *matured debts* or obligations held by the bank, in the same way that another debtor might assert setoff as a defense to an action in debt." *Id.* at 712–13. (Emphasis supplied).

As *Kaw Valley, supra*, recognizes, the right of setoff comes into existence when a "mutuality of indebtedness" is created. *Sturdivant Bank v. Stoddard County*, 332 Mo. 568, 572, 58 S.W.2d 702, 704 (banc 1933); *Mitchell v. Bank of Ava*, 333 Mo. 1195, 1200, 65 S.W.2d 104, 107 (1933). As pointed out in *Kaw Valley, supra*, Secs. 431.160 and 509.480 RSMo 1978 establish that an assignment freezes the right of the assignor to deal with the property after it is made, and freezes the right of counterclaim of the obligor for debts of the assignor arising after notice of the assignment. That is in keeping with the case law. Sec. 369.154(2), which codifies the lien of a savings and loan association for debts of a depositor against the deposit, also recognizes the effect of a pledge upon that lien. The last sentence of that section provides that "if written notice of such pledge is served upon the association, the pledgee *shall* be protected." (Emphasis supplied). It is apparent that such protection is not afforded if subsequently incurred debts of the depositor to the association achieve priority over the pledge.[3] The statutory lan-

---

1. The applicable portion of that section reads as follows: "The association shall have a lien on a savings account for all amounts owed it by the owner thereof. The owner of a savings account may pledge the account to secure his own obligation or that of another and, if written notice of such pledge is served upon the association, the pledgee shall be protected."

2. That section as applicable reads as follows: "(1) Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale ... the rights of the assignee are subject to: (a) all the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom; ..."

3. Bank has used the terms "pledge" and "assignment" interchangeably. Such is not un-

guage which gives Roosevelt the lien also establishes the pledge protection Bank invokes. We do not believe that *Kaw Valley, supra,* can, in that light, be distinguished, as Roosevelt suggests, as applying only to bank deposits. That case accurately states the law as to creation of a right of setoff and that law would apply with equal force to a savings and loan association acting pursuant to a statutory lien.

 We conclude therefore that the statute relied upon by Roosevelt grants the association a lien against a deposit only when that debt matures. The deposit contract would have the same limitation. The priority of that lien is determined by the date on which it became a lien and liens prior in time have priority over it. It follows that Bank's lien was prior in time to Roosevelt's and was therefore superior. The trial court erred in denying Bank relief on its counterclaim.

Roosevelt contends that the note upon which Kneff defaulted was dated April 21, 1975, after all but two of the charge-backs by Roosevelt. The pledge agreement reflected that the pledge was a continuing one collateralizing a series of loans. The notice of pledge to Roosevelt, accepted by it, stated, "Please consider this letter as an assignment of that account until the loan is liquidated, at which time we will notify you." The loan was never liquidated and Roosevelt was never so notified. The pledge was in effect throughout the time the insufficient funds checks were issued and Kneff's debts to Roosevelt came into existence. The same applies to the continuation of the lien from account 780–0201 to 780–0800. Bank conditioned its release of the lien on account 780–0201 to the transfer of the pledge to account 780–0800. That condition was accepted by Roosevelt. Roosevelt is in no position to complain that it was unaware of Bank's pledge prior to honoring Kneff's checks.

common. *See Kaw Valley, supra*; Sec. 369.-174(2) RSMo 1978. Although the Bank's security document is delineated an assignment,

Judgment reversed and cause remanded for further proceedings consistent with this opinion.

SATZ, J., and STOCKARD, Special Judge, concur.

we believe it to be a pledge. Our conclusion would not be different if it were an assignment.