Statement.

## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## BROAD STREET BANK AND OTHERS V. BAKER MOTOR VEHICLE COMPANY.

### June 8, 1916.

### Absent, Cardwell, J.

1. PRINCIPAL AND AGENT—*Pledge of Principal's Goods for Agent's Debt.*—An agent with power to sell has no power to bind his principal either by pledging or selling the principal's goods as a security for, or in discharge of, his own debt.

2. SALES—*Substitution of One Purchaser for Another—Agent's Commission.*—Upon a demurrer to the evidence, in the absence of evidence to the contrary, upon the substitution of one purchaser of a machine for another, at the same price, the jury might properly have drawn an inference that the agent who made the sale was entitled to the same commission as on the original sale.

3. PRINCIPAL AND AGENT—*Payments to Agent by Debtor of Principal.*—Where a principal is indebted to his agent a debtor of the principal may lawfully credit the agent and charge the principal with a part of the amount due from the principal to his agent. This is not paying the agent's debt with the principal's money, but lawfully applying the agent's money to the payment of his own debt, and is in no way prejudicial to the principal.

4. SALES—*Agreement to Sell—Appropriation of Goods to Contract.*—Until the specific goods upon which the contract is to operate are agreed upon, the contract is not a sale but an agreement to sell goods of a particular description; but an appropriation of the specific goods to the contract with the assent of both parties completes the sale, and was done in the case at bar.

5. DETINUE—*Legal Title.*—A party who has parted with the legal title to a chattel and never acquired it again cannot maintain an action of detinue therefor.

Error to a judgment of the Hustings Court, Part II, of the city of Richmond, in an action of detinue. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Wellford & Taylor, George E. Haw* and *Scott & Buchanan,* for the plaintiffs in error.

*Munford, Hunton, Williams & Anderson* and *Thomas B. Gay,* for the defendant in error.

WHITTTE, J., delivered the opinion of the court.

In an action of detinue appellee recovered against the appellants, on a demurrer to the defendant's evidence, the judgment under review for the Baker electric automobile, specifically described in the declaration.

The following is a summary of the material facts from the standpoint of a demurrer to the evidence: Appellee, hereinafter called the Baker Company, is a corporation of Cleveland, Ohio, engaged in the manufacture and sale of automobiles. Desiring to introduce its cars in the city of Richmond, in the year 1910, it formed a business connection with the Worth Auto Sales Company (later known as Worth Electric Vehicle Company), styled herein the Worth Company, by which the latter company was given the exclusive right to sell Baker machines in Richmond, and only dealt in those machines. The Worth Company advertised the Baker electrics in the daily city papers, and the windows of its salesroom displayed signs that it was agent for those machines, and it was known to the trade in Richmond as general agent for the sale of

Baker electrics. By general course of business between the parties it was customary for the Worth Company to find a purchaser for a car, and to send in an order for the same to the Baker Company, giving name of prospective purchaser, and specifications by which the car was to be constructed. In shipping, the Baker Company would send a bill of lading drawn to its own order, with draft attached, either upon the purchaser or the Worth Company, through a Richmond bank; and if drawn on the former, the Worth Company would be notified by letter. If the draft was for the catalogue price of the car, upon its payment the Baker Company would remit to the Worth Company, for its compensation in effecting the sale, the difference between the catalogue price and the dealer's price.

In October, 1912, the Worth Company sent in an order from O. D. Pitts for a Baker electric, of the description and price of the car in controversy, which order likewise included two other cars. The order recites the payment of one thousand dollars, five hundred dollars paid in money, and five hundred represented the amount allowed for a station wagon taken in exchange for the Pitts car. Upon that order two machines were shipped on February 13, 1913, and the bills of lading forwarded through the Broad Street Bank with instructions to deliver the machines upon payment of a draft on the Worth Company for $2,800, and the signing of a contract covering two cars, one of which was the Pitts car in litigation. The contract ignores the payment made by Pitts and recites that the cars are to be held as the property of the Baker Company. The dealer's price named for the machine in controversy was $2,020, while that named in Pitts' order is $2,700, the difference, $680, being the compen-

sation of Worth Company. Pitts was not notified
that the car had been shipped, and did not know of its
arrival in Richmond until it had been in use for some
time by Richards, the president of the Worth Com-
pany, and he declined to accept it. Before the arrival
of the Pitts car, negotiations were pending between
the Worth Company and the Times-Dispatch for the
sale of a machine to be used as a prize by the latter
company in a circulation contest. By letter of Feb-
ruary 19, 1913, the Worth Company agreed to sell the
Times-Dispatch a machine corresponding to the de-
scription of the Pitts machine for $2,700, f. o. b.
Richmond, $1,500 cash and a due bill for $1,200 in
advertising, the advertising space to be used within
twelve months, and the car to be delivered April 13,
1913. On March 12, 1913, the Baker Company
specifically authorized the Worth Company to sell the
Pitts car to the Times-Dispatch upon the above-
mentioned terms. In fulfilment of the agreement, the
Times-Dispatch gave its check for $1,500 and entered
on its books an advertising credit for $1,200. It also
gave a written order to Mrs. Asher, who was declared
the winner, for the Baker car. The Pitts car was
delivered and accepted in satisfaction of that order,
and shortly thereafter the machine was sold and de-
livered by Mrs. Asher to Cunningham Hall. In our
view of the case, subsequent transfers of the car are
immaterial.

At the date of the entry of the $1,200 advertising
credit, the books of the Times-Dispatch showed an
indebtedness, as of January 1, 1913, by the Worth
Company to it of $460.35 for prior advertising, with
which amount the $1,200 was credited. Upon that
circumstance the Baker Company grounds its conten-
tion, and the case depends upon its ability to establish

the proposition that that fact *per se* avoided the sale. The method of bookkeeping of the Times-Dispatch does not concern us; nor have we any quarrel with the just and well settled principle, that an agent with power to sell has no power to bind his principal either by pledging or selling the principal's goods as a security for or in discharge of his own debt. The rule that he possesses no such power is elementary and universal in its application. Such a transaction furnishes inherent evidence of obliquity and necessarily carries notice to one knowingly dealing with an agent. Yet, obviously, the doctrine has no bearing upon the facts of this case. It will be remembered that by general compact between the Baker Company and the Worth Company, the compensation of the latter for effecting the sale of a car was the difference between the catalogue price and the dealer's price, which in the case of the Pitts car was $680. The substitution by the Baker Company of the Times-Dispatch for Pitts as the purchaser of the Pitts car did not vary the original price of the machine; and upon a demurrer to the evidence, in the absence of testimony to the contrary, it is a just inference that a jury might properly have drawn, that the Worth Company was entitled to its commissions. *East. Motor Co.* v. *Apperson-Lee Co.*, 117 Va. 495, 85 S. E. 479.

It follows from what has been said that the Times-Dispatch was within its rights in applying as a credit on the $1,200 item the pre-existing indebtedness of the Worth Company to the extent of $680, the amount of its share of the fund. In so doing it was not paying the agent's debt with the principal's goods, but lawfully was applying the agent's money to the payment of its debt. The transaction was in no way prejudicial to the rights of the principal.

It is furthermore urged that the title to the Pitts machine did not pass, because that specific machine was not sold to the Times-Dispatch, but only a machine of that class; quoting Benjamin on Sales, Rule 23, p. 87, that "Until the specific goods upon which the contract is to operate are agreed upon, the contract is not a sale but an agreement to sell goods of a particular description. If the specific goods are not ascertained by the agreement, the property does not pass until an appropriation of specific goods to the contract is made with the assent of both parties."

That was done in this case. The Pitts machine was appropriated by the Baker Company to the contract, and accepted by the assignee of the Times-Dispatch, which satisfied the requirement of Rule 23.

Having reached the conclusion that the Baker Company was divested of its title to the Pitts machine by the sale to the Times-Dispatch, and the transfer to Mrs. Asher, the subsequent misconduct and bankruptcy of the Worth Company is immaterial. The Baker Company having parted with the legal title and never having acquired it again, could in no aspect of the case maintain detinue to recover the machine.

For these reasons the judgment must be reversed, the demurrer to the defendants' evidence overruled, and judgment entered for the appellants upon the verdict provisionally found by the jury.

*Reversed.*