# Donna M. Fleming, Guardian, Etc.

## v.

## Bank of Virginia

Record No. 830421

April 25, 1986

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson and Russell, JJ., and Gordon, Retired Justice.

*Christopher M. Malone (C. Grice McMullan, Jr.; Thompson & McMullan,* on briefs), for appellant.
*John Jay Range (Joseph C. Kearfott; Hunton & Williams,* on brief), for appellee.

RUSSELL, J., delivered the opinion of the Court.

This appeal tests a bank's right of setoff against a depositor's account. Donna M. Fleming, as guardian for her grandmother, Alma S. Elliott, brought this action against Bank of Virginia to recover $13,286 of Mrs. Elliott's funds on deposit with the bank, which the bank had seized to satisfy a debt owed by another. The case came to jury trial, but at the close of the plaintiff's case the court ruled as a matter of law that the plaintiff was not entitled to recover, granted the bank's motion to strike the plaintiff's evidence, and entered judgment for the bank. The sole question on appeal is whether the bank was entitled, as a matter of law, to assert a right of setoff against Mrs. Elliott's funds on deposit.

Alma S. Elliott, who was 84 years old at the time of trial, had been a resident of Maryland before 1978. In that year, because of poor health, she moved to Hanover County, Virginia, to live with her granddaughter and grandson-in-law, Donna and Clarence Fleming. Mrs. Elliott, desiring to transfer her funds from Mary-

land to a bank near her new home, asked Mr. Fleming to assist her.

Mr. Fleming had dealt with the Mechanicsville Branch of the Bank of Virginia for about ten years. After asking the branch manager's advice, Mr. Fleming, on October 2, 1978, opened two accounts with the bank, a savings account and a certificate of deposit. Both accounts were in the names "Alma S. Elliott or Clarence E. Fleming." Withdrawals could be made on either signature, but it is undisputed that the funds were entirely Mrs. Elliott's and that Mr. Fleming was given access to the accounts solely for convenience.

When the bank opened the accounts, it furnished a signature card which both Mrs. Elliott and Mr. Fleming signed. Language printed at the bottom of the card provided:

> All accounts requested above shall be subject to, and the above signed will be bound by, the applicable RULES AND REGULATIONS governing such accounts, in effect on this date and as modified from time to time by the issuing bank. Receipt of RULES AND REGULATIONS applicable to accounts requested above is hereby acknowledged.

The bank entered the number of the certificate of deposit, 100093, over the language quoted above and noted that the certificate was in the amount of $17,700. On a copy of the card, but not on the original, the bank entered the number of the savings account, 57-99445-1, and noted an initial deposit of $51.22. Interest earned by the certificate was deposited in the savings account. The original certificate of deposit expired April 2, 1979 and was "rolled over," or replaced by a new certificate dated April 3, 1979, also in the amount of $17,700. The bank recorded the number of the new certificate, 121787, on a copy of the signature card but not on the original.

The foregoing transactions are the only ones recorded on the signature card and none of them relate to the account which is the subject of this appeal. The operation of the card's above-quoted language "all accounts requested above" therefore extends only to the three accounts whose numbers appear on the card. The bank, however, contends that the card is a "universal signature card," whose language regulates all contractual relationships between the

bank and the depositors who signed it relating to subsequent accounts.

In 1979, Mrs. Elliott sold her house in Maryland and asked Mr. Fleming to deposit the net proceeds, $31,000, in the bank. Mr. Fleming opened another certificate of deposit in the names "Alma S. Elliott or Clarence E. Fleming" in that amount. The bank obtained no signature card relating to the transaction. The certificate was "rolled over" on April 10, 1980 and again on October 22, 1980. It was prematurely redeemed on December 22, 1980, but from its proceeds $20,116.21 was redeposited on that date. The bank issued a new certificate, number 001-201959-2, for $20,116.21, in the names "Alma S. Elliott or Clarence E. Fleming." Again, Mrs. Elliott signed no documents in connection with the transaction, but Mr. Fleming signed the face of the certificate. The certificate contains language which states: "This certificate is subject to the applicable rules of Bank of Virginia and to State and Federal laws and regulations." This last certificate is the subject of this appeal. It matured on June 22, 1981.

In early 1981, Mr. Fleming became indebted to the bank in an unrelated business matter. He had endorsed a note and guaranteed payment of a $10,000 loan the bank had made to Stoveworks of Richmond, Inc. Stoveworks defaulted, the bank demanded payment from Mr. Fleming, he failed to pay, and the bank sued him.

When Mr. Fleming appeared at the bank on June 23, 1981, the day after Mrs. Elliott's certificate had matured, he signed the certificate and turned it over to a bank employee for redemption. A new branch manager, however, refused to make payment. He told Mr. Fleming that he would hold the certificate until the Stoveworks loan was repaid or the pending litigation was resolved but that the certificate would continue to earn interest at its agreed rate of 15.673%. On July 16, 1981, the bank's attorney wrote to Mr. Fleming advising him that the bank had elected to exercise its right of setoff under its "rules and regulations. . . specifically 2(b) and (e)," for the "suit amount of $12,500.00 plus $36.00 court costs and $750.00 interest." A check for the balance of the certificate amount remaining after the claimed setoff was enclosed with the letter. To this the bank added interest at 13.606% for 22 days, for a total refund of $6,995.21.

Mrs. Fleming qualified as guardian for Mrs. Elliott and brought this action against the bank to recover $13,286, the total amount set off, with interest at 15.673% from June 23, 1981.

When the proceeds of sale of Mrs. Elliott's Maryland property were deposited in the bank in 1979, Chapter 2.1, "Multiple-Party Accounts," Code § 6.1-125.1, et seq., had recently been added to Title 6.1 of the Code. Its purpose was to regulate the relationships between financial institutions and multiple depositors. Code § 6.1-125.1(4) provides that an account payable on request to one or more of two or more parties is a "joint account," whether survivorship is mentioned or not. Code § 6.1-125.1(6) provides, in pertinent part, that the "net contribution" of a party to a joint account is the sum of all deposits thereto made by or for him. Code § 6.1-125.3(A) provides that a joint account belongs, during the lifetimes of all parties thereto, to the parties in the proportions the net contributions by each bear to the sums on deposit unless the parties are husband and wife or there is clear and convincing evidence of a contrary intent. There is no evidence of a contrary intent here, and indeed, the bank does not dispute Mrs. Fleming's assertion that Mrs. Elliott was the sole beneficial owner of all funds on deposit represented by the certificate which is the subject of this appeal.

Code § 6.1-125.14 provides:

Without qualifying any other statutory right to setoff or lien and subject to any contractual provision, if a party to a multiple-party account is indebted to a financial institution, the financial institution has a right to setoff against the account in which the party has or had immediately before his death a present right of withdrawal. The amount of the account subject to setoff is that proportion to which the debtor is, or was immediately before his death, beneficially entitled, and in the absence of proof of net contributions, to an equal share with all parties having present rights of withdrawal.

Because there was no absence of proof of "net contributions" in this case, it is apparent that the bank's right of setoff under the plain terms of § 6.1-125.14 extended only to such part of the sums represented by the certificate as might have been contributed by Mr. Fleming, the bank's debtor. Because his contributions were nonexistent, the bank's statutory right of setoff is empty.

The bank, however, contends that its statutory right of setoff has been expanded by contract. Mrs. Fleming concedes that if

Mrs. Elliott had agreed to be bound by the bank's rules and regulations with respect to the certificate in question, the rules are broad enough to permit the bank to seize all sums on deposit in a multiple-party account to satisfy a debt owed to the bank by any party, regardless of beneficial ownership of the funds.* The fact remains, however, that Mrs. Elliott never so agreed.

The signature card constituted the contract between the parties and, subject to the statutory scheme, regulates their rights and duties. *Colley* v. *Cox*, 209 Va. 811, 814, 167 S.E.2d 317, 319 (1969). It was the only contract Mrs. Elliott had signed with the bank. Its plain terms restrict its effect to the accounts mentioned on its face. The bank's contention that it was a "universal signature card" which would regulate all subsequent accounts between the bank and the card's signatories conflicts with the plain language of the card, language which the bank had selected. Although contracting parties may agree that their contract will, until modified, regulate any number of subsequent transactions not yet in their contemplation, elementary principles of contract law ensure that no such provision will be effective unless both contracting parties have assented to it. The card contains no such language and there is no evidence that Mrs. Elliott ever assented to such an arrangement in any other form.

In an alternative position taken in oral argument, the bank contends that Mr. Fleming's signature on the face of the certificate of deposit which is the subject of this appeal binds Mrs. Elliott to the bank's rules and regulations because he acted as her

---

\* Rules, Regulations and Agreements Governing Savings Certificates of Deposit Accounts.

These Rules, Regulations and Agreements shall apply to and govern Savings Certificates of Deposit Accounts (including single and multiple maturity instruments as well as those in negotiable and non-negotiable form) maintained by each depositor and customer with Bank of Virginia-Central (the "Bank"). The signing of the Bank's signature card or the making of a deposit by the depositor or his agent shall constitute assent hereto and to any changes or amendments hereof or new Rules, Regulations and Agreements made as hereinafter provided. These Rules, Regulations and Agreements shall not be interpreted as limiting or impairing any protection or immunity afforded the Bank under applicable law.

. . . .

2. (e) The Bank may, at any time, at its discretion and with or without notice to the depositor, or any of them, assert a lien on the balance in the account of the depositor, and apply any part or all of such balance to any indebtedness, matured or unmatured, that then may be owing to the Bank by the depositor and offset the amount so applied against a corresponding amount of such indebtedness.

agent in creating the debtor-creditor relationship between her and the bank. This contention lacks merit. There is no evidence that Mrs. Elliott agreed to permit Mr. Fleming to pledge her funds as security for his own debt, and no such agreement can be implied. The statute of frauds, Code § 11-2(4), bars enforcement of a promise to answer for the default of another, unless evidenced by a writing signed by the party to be charged or his agent. A prudent lender must be cognizant of this state of the law. He must also be aware that agency cannot ordinarily be proved solely by the utterances of the purported agent. *Drake* v. *Livesay*, 231 Va. 117, 121, 341 S.E.2d 186, 188-89 (1986). If he wishes to rely on an agency, he must look further.

Here, the circumstances would show the lender only that the purported agent had agreed to abide by bank rules which ostensibly had the effect of pledging his principal's assets as security for the agent's debt. It has been well settled in Virginia for over a century that an agent has no such power, and that all who deal with him are charged with notice of that fact. *Broad St. Bank* v. *Baker Motor Vehicle Co.*, 119 Va. 26, 89 S.E. 110 (1916); *Stainback* v. *Bank of Virginia*, 52 Va. (11 Gratt.) 269, 278 (1854); *Hewes* v. *Doddridge & C.*, 40 Va. (1 Rob.) 143, 146 (1842). "Such a transaction furnishes inherent evidence of obliquity and necessarily carries notice to one knowingly dealing with an agent." *Broad St. Bank*, 119 Va. at 30, 89 S.E. at 111. Thus, if the bank wished to bind Mrs. Elliott to a pledge of her funds to answer for the debt or default of her agent, more was required than the signature of her purported agent.

Because the case was decided upon a motion to strike at the close of the plaintiff's evidence, we would, on reversal, ordinarily remand in order to permit the defendant bank to prove, if it could by its own evidence, that Mrs. Elliott had expressly agreed to be bound by the bank's rules with respect to the $20,116.21 certificate of deposit. In argument on appeal, however, the bank conceded that Mrs. Elliott was never in the bank, that the bank manager had never spoken with her, and that there was no evidence that she had ever seen the bank's rules and regulations. In view of these concessions, and in light of our view of the bank's legal position, it is unnecessary to remand for further trial upon the principal issue in the case. Accordingly, we hold that the bank had no right of setoff with respect to the $20,116.21 certificate of deposit.

It is also unnecessary to remand for trial the subsidiary issue of the appropriate rate of interest to which Mrs. Elliott is entitled. Wrongful appropriation by a bank of a customer's funds on deposit, and its use of the money during litigation, makes the bank liable for interest on the fund. *Lutz* v. *Williams*, 84 W. Va. 216, 99 S.E. 440 (1919). The legal rate of interest applies only in the absence of a lawful contract rate. *Campbell* v. *Sickels*, 197 Va. 298, 305, 89 S.E.2d 14, 20 (1955). Where a specified rate of interest is contracted for upon an obligation, and the rate is lawful, that rate will continue to apply after maturity of the obligation, and even after judgment, until the debt is fully paid. The reason for this is the court's lack of power to dispense with the obligations of lawful and valid private contracts. *Cecil & Perry* v. *Hicks*, 70 Va. (29 Gratt.) 1 (1877); *Brooke* v. *Roane & Co.*, 5 Va. (1 Call) 205 (1798); *see Roberts* v. *Cocke*, 69 Va. (28 Gratt.) 207 (1877); *Kent* v. *Kent*, 69 Va. (28 Gratt.) 840 (1877); Code § 6.1-330.10.

Thus, even though the bank had no opportunity to refute Mr. Fleming's testimony that the bank manager promised, when impounding the certificate, to apply the contractual interest rate of 15.673% after maturity, Mrs. Elliott's right to that rate is fixed by law and does not depend upon the manager's alleged oral promise. Accordingly, this subsidiary issue must also be resolved as a matter of law.

Proceeding, pursuant to Code § 8.01-681, to enter such judgment as seems right and proper, we will reverse the judgment appealed from and enter final judgment here for the appellant in the sum of $13,286, with interest at 15.673% from June 23, 1981 until paid, and costs.

*Reversed and final judgment.*