Tonya GREENWOOD and Mary Ellen Keene, as Next Friend for Jay Greenwood, a Minor, and Mary Ellen Keene, Individually, Plaintiffs–Respondents,

v.

BANK OF ILLMO, a Banking Corporation, Defendant–Appellant.

No. 16208.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 15, 1989.

Motion for Rehearing or to Transfer
Denied Jan. 5, 1990.

Application to Transfer Denied
Feb. 13, 1990.

Albert C. Lowes, Lowes & Drusch, Cape Girardeau, for defendant-appellant.

Jim S. Green, Sikeston, for plaintiffs-respondents.

FLANIGAN, Presiding Judge.

The basic issue is whether a bank, which issued a certificate of deposit ("CD") jointly to A, B, and C, may, on the maturity of the CD, set off its proceeds against A's delinquent note held by the bank when B and C furnished the money for the CD. This court, on the facts at bar, answers the question in the negative.

On October 23, 1981, Bank of Illmo, defendant below and appellant here, issued a CD in the amount of $6,500 with a maturity date of April 23, 1984, and an interest rate of 15.40 percent per annum. The depositors were Mary Ellen Keene and her children, Tonya Greenwood and Jay Greenwood, plaintiffs below and respondents here. The parties agree that the certificate was in such form as to comply with § 362.470,[1] dealing with joint deposits. When the CD was issued, Tonya Greenwood was 19 and Jay Greenwood was 14.[2]

The face of the CD included the following:

"Depositor(s) Mary Ellen Keene or Tonya Greenwood or Jay Greenwood, JWROS,[3] Deposit $6,500,

Payable to said depositor, or, if more than one, to either or any of said depositors or the survivors or survivor, upon presentation and surrender of this certificate, properly endorsed, on the Maturity Date. For all purposes, including payment, presentation and transfer of this certificate, payment of interest hereon, and any notice, this bank may deem and treat as the absolute owner hereof any depositor named above. If more than one depositor is named above, this certificate and the deposit evidenced hereby shall belong to said depositors as joint tenants with right of survivorship, but this bank may deem and treat either or any of said depositors or the survivors or survivor as the absolute owner, and each such depositor shall be the agent of each other depositor for all the foregoing purposes. In mailing interest check and any notice, this bank may rely upon such address as is shown upon its books."

On the date the CD was issued, it was accompanied by a signature card which contained four lines for signatures. Immediately above those lines was the language, "The undersigned agree to the conditions printed on the back side of this card." Only Mary Ellen Keene signed the signature card. Neither Tonya Greenwood nor Jay Greenwood signed it.

On the back side of the signature card the following language appears:

"*The Signed Depositors* hereby agree to the conditions printed on the reverse side hereof for the transaction of business with you for the account named. They also agree each with the other(s) and with you that all sums now on deposit or hereafter deposited by either or any of the depositors shall be the property of the depositors jointly and severally, with right of survivorship, and also *the depositors jointly and severally hereby authorize the bank*, at any time it deems itself insecure, or in case of the death or insolvency of any depositor to charge or *setoff* against any deposit of the depositors with the bank, any debts or obligations owing by the depositors to the bank whether direct or indirect, secured or unsecured, absolute or contingent, *joint or several*, due or to become due, either as maker, endorser, guarantor, or otherwise, now existing or hereafter contracted or acquired by the bank and

the control or lien of all other persons, except creditors, and shall be paid, together with any interest thereon, to or upon the order of the person in whose name the deposit is made, and the check, receipt or acquittance of the minor shall be a valid and sufficient release and discharge for the deposit or any part thereof to the bank or trust company."

---

1. All references to statutes are to RSMo 1986, V.A.M.S., and all references to rules are to Missouri Rules of Court,, V.A.M.R.

2. Section 362.470.1 reads, in pertinent part: "... As to any minor who is a joint tenant as provided in this section, all the provisions of § 362.465 shall apply."

Section 362.465 reads:

"When any deposit is made by or in the name of any minor, it shall be held for the exclusive right and benefit of the minor, and free from

3. The parties agree that JWROS means "jointly with right of survivorship."

wherever payable, and the interest thereon and expense, if any, which may be incurred by the bank in connection therewith, and this agreement shall be construed to be the *consent of the depositors jointly and severally* to make such a charge or *setoff* against his *her their account(s) if consent be required by present or future statute or law.* Each of the depositors hereby appoints the other or each of the others his attorney, with power to deposit, withdraw (on an expiration date), and assign the account for loan collateral." (Emphasis added.)

On April 23, 1984, the date of maturity, Mary Ellen Keene, accompanied by her daughter and co-depositor Tonya Greenwood, presented the CD to the bank for payment. After obtaining the endorsement of Mary Ellen Keene on the CD, the teller escorted her to the office of the bank's president. There she was informed, according to the testimony of John Cochran, the bank president, "that the proceeds of the CD were going to be applied to one of her notes that had been charged off as lost. She had two or three notes. Those would have been her notes individually."

Also on April 23, 1984, according to Cochran's testimony, "proceeds of the CD were placed in an escrow account called Keene/Greenwood Escrow Account."

The bank's brief states: "The amount of the escrow, together with interest earned while in escrow, was set-off against Note No. A8115[4] on June 18, 1984. The note was signed by Mary Ellen Keene individually and was for a principal amount of $12,500. The sum applied to said note was $9,418.73."

The three co-depositors, as plaintiffs, instituted this action against the bank, alleging that the bank converted the CD to its own use. The petition sought actual damages "together with interest as allowable by law."[5]

After conducting extensive discovery, each side filed a motion for summary judgment. The trial court, in a judgment entered February 7, 1989, granted plaintiffs' motion and denied the bank's motion. The trial court awarded plaintiffs $13,577.90 in actual damages. The bank appeals.

In support of plaintiffs' motion for a summary judgment, the three plaintiffs filed separate affidavits, each of which stated that the CD was purchased for $6,500, half of which was contributed by Jay Greenwood and the other half was contributed by Tonya Greenwood. The affidavits stated that the two children obtained the money through gifts from their father and grandfather and from interest accrued thereon.

■ Although the bank's brief, as appellant here, contains seven "points relied upon," the bank's contentions in challenging the judgment essentially are these: The bank properly set off the proceeds of the CD against the delinquent note of Mary Ellen Keene; "mutuality necessary to a proper set off did exist in that the funds of an individual joint tenant were set off against the individual debt of that joint tenant"; "any joint depositor was entitled to the whole of the [CD]"; "Mary Ellen Keene treated [the CD] as her own, pledging [it] against her personal debts [to another bank] and using her own social security number as an identifier"; evidence as to the source of funds for the CD was inadmissible; the terms of the CD and the signature card comprised the complete agreement between the parties; the statute (§ 362.470.1 set forth in footnote 2) allows minors to hold joint bank accounts; the bank did not have knowledge of the trust nature of the account; the right to set off

---

**4.** This statement is at odds with the depositions of John Cochran, president of the bank, and Donna Sue Hodges, vice president. Each of them testified that the CD was set off against Note No. 8012, which was a note of Mary Ellen Keene dated November 1, 1982, for a principal amount of $9,500 and an annual interest rate of 13½ percent.

**5.** The petition also sought punitive damages but the trial court disallowed that claim. Plaintiffs did not appeal. The bank filed a counterclaim against plaintiff Mary Ellen Keene but later dismissed it.

is inherent in the debtor/creditor relationship.

"As a general rule a bank may look to deposits in its hands for the repayment of any indebtedness to it on the part of the depositor and may apply the debtor's deposits on his debts to the bank as they become due * * *. [S]uch right grows out of the debtor and creditor relation subsisting between bank and depositor, and finds its basis in the right of setoff, and in the application of equitable principles."

*Adelstein v. Jefferson Bank and Trust Co.*, 377 S.W.2d 247, 251 (Mo.1964).

"It is a general rule of practically universal application at law that, to warrant a set-off, the demands must be mutual and subsisting between the same parties and must be due in the same capacity or right. Equity usually follows the law, and it is held as a general rule that in equity as at law the right of set-off is reciprocal, and only mutual claims and such as are in the same capacity or right can be set off."

*Dalton v. Sturdivant Bank*, 230 Mo.App. 800, 76 S.W.2d 425, 426 (1934). To similar effect see *Roosevelt Fed. Sav. & Loan v. First Nat. Bank*, 614 S.W.2d 289, 292 (Mo. App.1981); *Mercantile Trust Co., Nat. Ass'n v. Mosby*, 623 S.W.2d 22, 24 (Mo.App. 1981). In *Mitchell v. Bank of Ava*, 333 Mo. 1195, 65 S.W.2d 104, 106 (1933), the court said: "The test of the right to set-off is the mutuality of the indebtedness."

A leading text has discussed the element of mutuality, essential to the validity of set off, as it pertains to joint deposits.

"The right of the bank to apply a deposit to an indebtedness due from the depositor results from the right of setoff which obtains between persons occupying the relation of debtor and creditor, and between whom there exist mutual demands, and it is familiar law that mutuality is essential to the validity of a setoff, and that in order that one demand may be set off against another, both must mutually exist between the same parties. Thus, the joint and several note of two or more persons cannot be paid out of the individual deposit of one, unless he is the principal and the others sureties, or unless it becomes necessary in order to do complete equity or avoid irremediable injustice. *Upon like principle, a bank has no right to set off against a deposit in the names of two persons or the survivor of them a debt due from one of them, save to the extent to which its debtor is shown to be the actual owner of the moneys deposited, even though the bank accepted the deposit without knowledge as to the actual ownership of the money.*" (Emphasis added.)

10 Am.Jur.2d Banks § 667, p. 637.

Out-state authorities hold that, in the absence of a statute or a specific agreement between joint depositors and the bank conferring upon the bank a right to set off the individual indebtedness of one of the depositors against the bank's liability on the joint account, the bank's set off may not exceed the interest of the indebted depositor in the joint account. *Atkinson v. Federal Deposit Ins. Corp.*, 635 F.2d 508, 512[4] (5th Cir.1981); *People's Bank of Denton v. Turner*, 169 Md. 430, 182 A. 314, 315[1] (1936); *Guilds v. Monroe County Bank*, 41 Mich.App. 616, 200 N.W.2d 769 (1972); *Sherman Cty. Bank v. Lonowski*, 205 Neb. 596, 289 N.W.2d 189, 192[2] (1980); *Sandler v. United Industrial Bank*, 23 A.D.2d 567, 256 N.Y.S.2d 442 (1965); *City Nat. Bank of Beaumont v. American Surety Co.*, 52 S.W.2d 259 (Tex. App.1932); *Fleming v. Bank of Virginia*, 231 Va. 299, 343 S.E.2d 341 (1986); 68 A.L.R.3d 192 (bank's right of setoff, based on debt of one depositor against funds in account standing in names of debtor and another).

The undisputed evidence was that the two children made equal cash contributions to the purchase of the CD and that Mary Ellen Keene, their joint tenant, contributed nothing. All three are still living. In *Beamon v. Ross*, 767 S.W.2d 580 (Mo.App. 1988), a case dealing with a joint bank account created under § 362.470, the court said, at 582:

"During the lives of the parties the depositor who furnished the money may revoke the joint tenancy. While any joint tenant may withdraw any or all of the funds 'the realities of ownership, the real intention of the parties and the purpose and nature of the account may be shown to determine the interest each has in the account, thus subjecting the one who has deposited none of the funds to accountability and liability.'"

In *Peters v. Carr*, 654 S.W.2d 317, 322 (Mo.App.1983), dealing with a joint account in a savings and loan association established under § 364.174, which is the counterpart of § 362.470 dealing with joint deposits in banks, the court recognized "the contributor's right to hold the non-contributor liable for withdrawal," and said that the provision in § 369.174 authorizing payment of money held in a joint account to *any of the joint tenants* merely authorized *payment* by the financial institution to either joint tenant, relieving the institution of liability for doing so.

In *Nieman v. First National Bank of Joplin*, 420 S.W.2d 20 (Mo.App.1967), the court held that a judgment creditor who had a judgment against only one of four joint owners of a bank account could not subject the account to payment of the judgment where the judgment debtor had contributed nothing to the joint account. Cf. *Mayer v. Clifford*, 713 S.W.2d 55, 57[4] (Mo.App.1986). Under *Nieman* a judgment creditor of Mary Ellen Keene could not have garnished the CD to which she had made no contribution.

In *Blue Valley Federal Sav. and Loan v. Burrus*, 637 S.W.2d 737 (Mo.App.1982), a case not cited by either side and which involved a joint account in a savings and loan institution, the joint tenants were A, B, and C. The funds for the account were contributed solely by A. A died. B was individually indebted to the savings and loan institution. The court held that the account was equally owned by B and C. The court said, at 744: "The question is whether [B] may effectively appropriate [C's] share of the account by having the account, to the extent of more than one-

half, applied to the payment of [B's] individual debt." B's debt was to Blue Valley, the institution in which the joint account was held.

At 745 the court said:

"The analogy between cases in which both joint account owners have contributed to create the account and the facts of the present case in which neither has contributed is compelling. [B] may no more justify application of [C's] share in the account to pay [B's] notes than he could demonstrate entitlement to withdraw the full balance, without accountability to [C]. Were such not the rule, the statutory joint tenancy which § 369.174 provides would be rendered meaningless. We therefore conclude that in division of the joint account, [C] *is entitled to one-half before setoff by Blue Valley of the note indebtedness due from [B]*." (Emphasis added.)

In *Blue Valley* the ownership of the joint account was 50–50 and the interest of the non-debtor/co-depositor was immune from Blue Valley's set off. In the case at bar, the two children contributed 100 percent and Mary Ellen Keene contributed nothing. Thus, she has no interest in the CD that would constitute a predicate for a set off by the bank based on her individual indebtedness.

■ This court holds that the CD, held jointly in the names of the three plaintiffs, to which plaintiff Mary Ellen Keene had made no contribution, could not, in the absence of the agreement of the two contributing plaintiffs, be set off by the bank against the delinquent note of Mary Ellen Keene held by the bank. For the reasons which follow, this court holds that the two contributing plaintiffs did not so agree.

The CD makes no mention of the bank's right of set off. The word "set off" does not appear on it, although the face of the CD uses the word "payment." Whatever benefit the bank might otherwise have derived from the general language of the CD is lost by the specific language of the signature card. The signature card, which neither Tonya Greenwood nor Jay Greenwood signed, specifically sets forth provi-

sions concerning set off. Significantly, however, that language is introduced by these words: "The Signed Depositors hereby agree ..." The only "signed depositor" was Mary Ellen Keene.

In *Fleming v. Bank of Virginia*, 231 Va. 299, 343 S.E.2d 341 (1986), cited earlier in this opinion, the court cited the provision of the Virginia Statute of Frauds barring enforcement of the promise to answer for the default of another unless evidenced by writing signed by the party to be charged or his agent.[6] The court said at 345: "[I]f the bank wished to bind [the contributing co-depositor] to a pledge of her funds to answer for the debt or default of her agent [the non-contributing co-depositor], more was required than the signature of her purported agent." See also *Southern Elec. Supply v. Raleigh County N.B.*, 320 S.E.2d 515, 519[2] (W.Va.1984).

 The fact that Mary Ellen Keene pledged the CD to another bank, an act specifically ratified by the two children, did not create in appellant a right of set off, nor was such right created by the use of Mary Ellen Keene's social security number. Evidence as to the source of funds for the CD was admissible as showing the respective ownership interests of the living co-depositors.

This court holds that the bank had no authority to set off the CD against any of its delinquent notes of Mary Ellen Keene. This holding makes it unnecessary to consider the secondary argument of plaintiffs that even if such a right existed, it was neither timely nor properly exercised.

The bank's final contention is that the trial court erred "in awarding pre-judgment interest" because "an award of pre-judgment interest must be pled, or at least facts supporting the right to pre-judgment interest must be pled, and none were present in this case." The judgment awarded the plaintiffs[7] $13,577.90. It

makes no mention of pre-judgment interest or of any interest at all. The bank has made no claim that, in this action for conversion of the CD, the judgment is excessive. It may be that the amount of the judgment approximates the amount due on the CD with interest accrued to date of judgment. The petition sought actual damages "together with interest as allowable by law." This court is precluded from reversing any judgment "unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action." Rule 84.13(b). No such error appears.

The judgment is affirmed.

MAUS and PREWITT, JJ., concur.

---

**6.** Cf. § 432.010; *National Refining Co. v. McDowell,* 201 S.W.2d 342, 346–347[1–2] (Mo.1947); *Wahl v. Cunningham,* 320 Mo. 57, 6 S.W.2d 576, 580–585 (1928).

**7.** None of the parties has complained of the fact that the judgment was in favor of all three plaintiffs rather than just the two children. In the petition, plaintiff Mary Ellen Keene stated "that she has no interest in all or any part of the said [CD]."