Garsh, J.
This action arises from the defendants’ setoff of balances in joint accounts in the names of the plaintiffs and Lorraine M. Colella against indebtedness of Lorraine M. Colella. The plaintiffs allege that they are the sole owners of the funds in those joint accounts and, consequently, the defendants converted their funds when they set off the moneys in those accounts against Lorraine M. Colella’s indebtedness. The plaintiffs also have alleged a violation of c. 93A. Easton Cooperative Bank (“Easton”) has moved to dismiss the complaint. At the hearing on Easton’s motion, the parties were advised that the matters outside the pleadings, which had been presented to the court, would not be excluded and that, accordingly, the motion to dismiss would be treated as one for summary judgment. Additional memoranda of law and affidavits were submitted following the hearing.
For the reasons set forth below, Easton’s motion to dismiss is DENIED.
BACKGROUND
On May 27, 1988, North Easton Savings Bank (“North Easton”) loaned $1,770,000 to Lorraine M. Colella, individually, and Eugene W. Colella, individually and as trustee of Genio Realty Trust. In connection with the loan, Loraine M. Colella executed a promissory note (the “Note”). The plaintiffs did not execute the Note. On the same day, North Easton entered into a participation and servicing agreement with Easton and two other financial institutions pursuant to which North Easton sold to these other banks a percentage ownership interest in the Note. Easton thereby became a holder of the Note. The Note provided that “in the event of default the holder of this Note shall have a lien on and option to set off and apply all deposits, credits and other property of the makers, endorsers, or guarantors, now or hereafter in its possession or control against this . . . indebtedness ... as permitted by law.” The plaintiffs were not makers, endorsers, or guarantors. The joint accounts were not in existence when the Note was executed.
In connection with the making of the loan, Eugene and Lorraine M. Colella submitted to North Easton a financial statement reflecting that they had money market accounts at North Easton with a balance of $153,000. While North Easton verified the balance of these accounts, it did not require the balances in those accounts to remain at that, or any other, level. An attachment to the participation agreement indicates that, in addition to the personal guarantees of Eugene and Loraine M. Colella, the Note was secured by first mortgages on three real estate properties having a total value of $2,290,000.
On December 21, 1990, Eugene Colella (“Eugene”) transferred $60,000 from his money market account to his checking account at North Easton and drew three checks of $20,000, payable to each of his three children. On the same date, three joint accounts were opened at Easton. The two accounts in issue in this *519 case were titled Jill Christine Colella (“Jill”) or Lorraine M. Colella (“Lorraine”) (account 2800235-0) and Michael William Colella (“Michael”) or Lorraine M. Colella (account 2800234-3). The signature cards for those accounts provides, in pertinent part, as follows:
The undersigned desire(s) to open this account payable to me, or, if more than one person signs below, to either of us or upon the death of one of us to the survivor.
The signature cards bore the signatures of Jill, Michael and Lorraine. The signature cards made no reference to setoff. The $20,000 checks drawn by Eugene Colella were deposited in each account. On January 16, 1991, Eugene Colella transferred an additional $21,000 from his money market account to his checking account and drew three checks for $7,000 each, payable to each of the three children. These checks were deposited to the joint accounts at Easton. No other deposits were made to the joint accounts and no funds were withdrawn from Jill or Michael’s accounts.
On February 14, 1996, Gene Colella filed a Chapter 11 Petition with the United States Bankruptcy Court as trustee of the Genio Trust. The following day, North Easton, as servicing agent, notified Lorraine that the Note was in default. Plaintiffs allege that their accounts were frozen by Easton on February 14, 1995. On March 16,1995, Easton set off the balance of funds held in Jill and Michael’s accounts ($31,662.45 from each account) against Lorraine’s indebtedness.[3] The plaintiffs claim that the money deposited in these accounts represents gifts from family and friends to Jill and Michael over the course of their childhood plus interest that had accumulated over the' years. They state that the accounts were intended to be used for special circumstances and emergencies, such as purchasing a home or starting a new business. Plaintiffs maintain that they are the sole owners of the funds in these accounts, that Lorraine had no claim to the moneys, that plaintiffs paid all the income taxes on said accounts, and that Lorraine’s name was included on the accounts purely for convenience.
DISCUSSION
Although there is no statute providing a financial institution with setoff rights, Massachusetts common law has long recognized that a bank may set off funds on general deposit to satisfy a debt that a depositor owes to the bank. Laighton v. Brookline Trust Co., 225 Mass. 458, 459-60 (1917); National Mahaiwe Bank v. Peck, 127 Mass. 298, 300-01 (1879). The right of setoff stems from the principle that general deposits become the absolute property of the bank, which becomes a debtor to the depositor in the amount of the deposit. Forastiere v. Springfield Institution for Savings, 303 Mass. 101, 103 (1939). A bank may exercise its right of setoff: (1) against funds deposited in an unrestricted account; (2) where there is a mutuality of obligation between the depositor and bank and between the debt and the account on deposit; (3) to apply the funds to a matured debt. Joseph J. Norton & Sherry C. Whitley, Banking Law Manual §11.05[2][a] at 11-36 (1993).
The issue presented by Easton’s motion is whether there was a mutuality of obligation. Although this issue has not yet been addressed by Massachusetts appellate courts, in other jurisdictions it appears settled that
[w]hen two or more persons own a joint account, as a general rule, the banking institution may set off the debt of one of the depositors to the extent of his interest in the account.
Norton & Whitley, Banking Law Manual, supra at §11.05[2][I] at 11-38. E.g., Greenwood v. Bank of Illmo, 782 S.W.2d 783, 786 (Mo.App. 1989) (absent specific agreement or statute to the contrary, bank may not set off more than interest of indebted depositor in joint account); People’s Bank v. Turner, 182 A. 314, 316 (Md.App. 1936) (“Whether ownership in the deposit under the entry was joint or joint and several, . . . the debt of one could not affect the right of the other” and bank’s lack of knowledge of extraneous facts is irrelevant); City National Bank v. American Surety Co., 52 S.W.2d 259, 261 (Tex.Com.App. 1932) (debts not mutual unless balance in joint account really belongs to individual debtor, in which case individual debt could be set off against joint account, pro tanto); Moskowitz v. Marrow, 167 N.E. 506 (N.Y. 1929) (joint tenancy created by deposit rebuttable so long as both depositors remain alive); accord, Atkinson v. Federal Deposit Insurance Corp., 635 F.2d 508, 512 (applying Alabama law), rehearing denied 642 F. 2d 145 (5th Cir. 1981).[4]
In the absence of all the depositors’ agreement to the contrary, limiting setoff to the extent of the depositor-debtor’s interest in a joint account is consistent with Massachusetts law because the joint account form is not conclusive of actual ownership. Blanchette v. Blanchette, 362 Mass. 518, 523-24 (1972) (representative of depositor’s estate may produce extrinsic evidence to establish that decedent did not intend to make a completed gift to the surviving party to account).
Easton argues that G.L.c. 167D, §5 provides it with the right to setoff the joint accounts at issue. That statute provides that any part or all of the deposits in a joint account may be “withdrawn, assigned, or transferred ... by any of the individual parties” and, further, that “payments” to any of the parties to a joint account discharges a bank’s liability. Easton contends that the setoff of joint funds against an individual debt constitutes “payment” of funds to one party to the account and, therefore, it should be absolved of liability. Although setoff may accomplish the same result as one of the parties to a joint account withdrawing funds and using them to pay a debt to the bank, nevertheless, setoff is not mentioned in the statute. A *520 statute addressing the circumstances under which a financial institution may set off against a joint account easily could be drafted. The Legislature has chosen not to do so. Compare Craig v. Hastings State Bank, 380 N.W.2d 618, 623 (Neb. 1986) (state statute giving financial institution right to set off funds in multiparty account, but only to the extent of the debtor’s beneficial interest in that account); Fleming v. Bank of Virginia, 343 S.E.2d 341, 344 (Va. 1986) (same); Simpson v. Georgia State Bank, 283 S.E.2d 278, 280 (Ga.App. 1981) (same).
Unlike setoff, each of the transactions referred to in c. 167D, §5 must be initiated by an act of one of the parties to the joint account. Application by a bank of funds on deposit is not a “withdrawal, assignment, or transfer” within the meaning of c. 168D, §5 because it has not been initiated at the direction of one of the parties to the account. Heffernan v. Wollaston Credit Union, 30 Mass.App.Ct. 171 (1991), upon which Easton relies, is not to the contrary. That case recognizes that a bank may give effect to a security interest in a joint account granted to it by one co-depositor. The Court held that creation of a security interest falls within the scope of a co-depositor’s authority to “assign” or “transfer.” In Heffernan, when the secured loan was executed, a “hold” was placed by the bank on the joint account to prevent withdrawal from depleting the balance below the amount pledged. The Court noted that the question it was considering was whether a joint owner may defeat his co-owner’s right of survivorship as to funds in a joint account by creating a security interest in those funds. Id. at 178. Here, no account was pledged or given as security for the loan to Lorraine; indeed, the joint accounts at issue did not exist when the loan was made and the depositors remained free, vis-a-vis Easton, to withdraw any or all of the funds. Cf. Warmka v. Wells Federal Savings & Loan Assoc., 458 N.W.2d 695, 697 (Minn.App. 1990) (assignment of existing joint account as security for individual debt absolves bank from liability for “payment” to one of the joint account holders).
There are a host of practical reasons why individuals may put their own funds into a joint account with another, often a parent or child of the beneficial owner. A second name may be added purely for convenience, as is alleged here, or for estate planning purposes, joint accounts being “a poor man’s will.” Blanchette v. Blanchette, supra, 362 Mass. at 526. The owner of the funds takes the risk that the other person on the account will withdraw, assign, or transfer those funds for his or her own benefit. The owner, however, should not have to take the additional risk that the bank may set off against that joint account debts of the other of which the owner may not even be aware. This type of ignorance should not be penalized. “Bank accounts in this form are opened not infrequently by the simple and the humble.” Moskowitz v. Marrow, supra, 167 N.E. at 512 (Cardozo, C.J., concurring).
Chapter 167D, §5 relieves a bank from the burden of having to investigate each request for withdrawal of funds by one party to a joint account, thus ensuring the stability and efficient operation of the banking system. The statute insulates banks from liability in making payments from a joint account; it does not, however, establish or affect ownership rights as between the account holders nor abrogate the mutuality requirement for setoff such as to give a bank the right to set off against the beneficial interest of the non-debtor depositor. Greenwood v. Bank of Illmo, supra, 782 S.W.2d at 787 (statute authorizing payment by bank to either joint tenant, relieving the bank of liability for doing so, does not provide the predicate for a setoff by the bank based on individual indebtedness of one depositor); Craig v. Hastings State Bank, supra, 380 N.W.2d at 625 (“While a bank’s payment made pursuant to statute discharges the bank from all claims for the amounts paid whether such payment is consistent with the beneficial ownership of the account as between the parties, the bank as a creditor availing itself of set off pursuant to [statute] must look to the debtor’s beneficial interest in a joint account”).
Easton next argues that denying a bank the right to set off funds in a jointly held account against an individual debt would be inconsistent with G.L.c. 167D, §20. That statute permits a person indebted to a bank, when proceeded against for collection of indebtedness, to set off the amount of a deposit in such bank; “any party to a joint account may set off the joint deposit against his individual debt to such bank.” Section 20 is consistent with §5, which empowers any party to a joint account to withdraw from that account. Section 20 does not address whether a bank, acting by itself, may avail itself to funds in a joint account that are not beneficially owned by the individual debtor and that the individual debtor does not seek to apply to payment of his or her debt. With respect to the bank’s exercise of its right of setoff, the Legislature has not chosen to abrogate the common law doctrine of mutualiiy.
In sum, a bank, without the consent of co-depositors, may not unilaterally seize and retain funds that may not be actually owned by the individual debtor. See Atkinson, supra, 635 F.2d at 512 (bank may not “summarily seiz[e] a jointly held asset which may very well be owned in whole or in part by the co-depositor who is not indebted to the bank”).[5] Whether Jill and Michael, are, as they maintain, the sole owners of the funds seized by Easton is a disputed issue of fact. Because Easton is entitled to retain only those funds, if any, which belong to Lorraine Colella, that question of fact is material.
In its post-hearing memorandum, Easton alternatively argues that the plaintiffs are equitably estopped from claiming that the joint accounts belong to them because, in deciding to purchase a percentage interest in the Note, Easton relied on the representations of *521 Lorraine and Eugene Col ella that the $153,000 in the money market accounts were their own assets. There is no evidence that the plaintiffs authorized or were aware of these representations. Furthermore, the materiality of those representations and the reasonableness of Easton’s reliance on them present disputed questions of fact given the tremendous disparity between the size of loan and the balance in the money market accounts. The value of the real estate security-obtained for the loan also raises a question of fact as to the materiality of the money market balances. Moreover, no “hold” of any kind was required to be placed on the money market accounts to prevent withdrawals from depleting the $153,000 balance. The record does not demonstrate that, as a matter of law, the bank is entitled to retain the funds under a theory of equitable estoppel.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant, Easton Cooperative Bank’s motion for summary judgment, denominated as a motion to dismiss, is DENIED.

The third joint account apparently was closed prior to February 15, 1995, and is not at issue in this action.

See generally 10 Am. Jur. 2d Banks §667 at 638 (1963) (“[A] bank has no right to set off against a deposit in the names of two persons ... a debt due from one of them, save to the extent to which its debtor is shown to be the actual owner of the moneys deposited, even though the bank accepted the deposit without knowledge as to the actual ownership of the money"). Compare Burgess v. First National Bank, 498 P.2d 1035, 1037 (Colo.App. 1972) (bank may set off funds in joint account against depositor’s individual debt where account was subject to an assignment given the bank simultaneously with the opening of the account, and, by virtue of the assignment, the claim of the bank was prior to plaintiffs claim to the account) with Mancuso v. United Bank, 818 P.2d 732, 740 (Colo. 1991) (en banc) (if debtor holds title to joint account upon a resulting trust, bank may not set off funds in that account unless it proves that it extended credit in reliance upon payment from joint account).

Of course, banks may avoid the situation confronting Easton by including, in the deposit agreement executed when the joint account is established, the right to set off funds in a joint account against the individual debt of either depositor. As between a bank and the named depositors, the deposit agreement is binding whatever the actual interest either depositor may have in the joint account. Sawyer v. National Shawmut Bank, 306 Mass. 313, 316 (1940). The signature cards signed by the plaintiffs do not authorize Easton to apply the deposits in those accounts to the debt of only one of the co-depositors; as for the Note executed by Loraine prior to creation of the joint accounts, the plaintiffs did not sign that contract. Compare Sullivan v. Central Bank, 601 So. 2d 985, 986 (Ala. 1992) (account agreement explicitly provided that bank could set off against the joint account the individual debt of any account owner without regard to whether the debt is owed to the bank by all of the account owners). Simpson v. Georgia State Bank, 283 S.E. 2d 278, 283 (Ga.App. 1981) (same).